YOUNG, Appellant,

v.

THE MORNING JOURNAL et al., Appellees.

[Cite as *Young v. The Morning Journal* (1998), 129 Ohio App.3d 99.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 97CA006889.

Decided July 15, 1998.

100

*James H. Young*, pro se.

*Richard D. Panza* and *Russell R. Aukerman*, for appellees.

---

CACIOPPO, Judge.

Plaintiff James H. Young has appealed from an order of the Lorain County Common Pleas Court that granted defendants, The Morning Journal and The Journal Register Company, summary judgment in his defamation action against them. He has argued that (1) the trial court incorrectly concluded that plaintiff was a public figure for defamation purposes and (2) the trial court incorrectly determined that plaintiff had not produced sufficient evidence of actual malice to defeat defendants' motion for summary judgment.[1] This court affirms the judgment of the trial court because (1) the trial court correctly concluded that plaintiff was a public figure and (2) the trial court correctly determined that there was insufficient evidence of actual malice to preclude summary judgment.

I

On July 19, 1993, plaintiff filed this defamation action against defendants in response to an article that appeared in The Morning Journal on July 20, 1992. The article read as follows:

"Amherst attorney James Young is facing a contempt of court citation for not appearing at a pretrial hearing Thursday before Lorain County Common Pleas Judge Lynett McGough.

"The judge is ordering Young to appear before her July 30 to show why he shouldn't be held in contempt of court.

"Young could not be reached for comment.

"Mrs. McGough said Young failed to appear at a final pretrial for a client facing criminal charges, who had privately retained him, and she was forced to reschedule a jury trial set for July 22."

The article was written by reporter Joanne Allen. On July 17, 1992, she was reviewing journal entries in the clerk of court's office at the Lorain County Common Pleas Court. She came across a handwritten journal entry that contained the statements "Attorney James C. Young is held in contempt. A show cause hearing is set for July 30, 1992 at 1:30 p.m. See Journal." Allen had previously written articles in which plaintiff had been mentioned, but, according to her, she had not known plaintiff's middle initial. According to her deposition

---

1. Plaintiff's assignments of error have been consolidated for ease of discussion.

testimony, she attempted to find the other journal entry referred to in the handwritten one, but could not locate it. In addition, she also attempted to reach plaintiff by telephone for comment. She claimed to have left a message on plaintiff's telephone answering machine, a message plaintiff denied having received. According to her, she believed that the attorney facing the contempt charge was plaintiff and, therefore, added "Amherst Attorney" in front of his name. She also omitted the middle initial "C" that had appeared in the journal entry.

Plaintiff was made aware of the article by a client the day after it was published. Plaintiff called an assistant editor of The Journal and requested that a correction be printed. The following correction appeared in The Journal on July 23, 1992:

"Attorney James Young, who is facing a contempt of court charge before Lorain County Common Pleas Judge Lynett McGough, was incorrectly identified as being from Amherst. Young is a Cleveland attorney, according to Judge McGough's office."

Defendants moved for summary judgment on August 8, 1994, arguing that the article was privileged pursuant to R.C. 2317.05. Summary judgment was granted by the trial court and then reversed by this court. *Young v. The Morning Journal* (1995), Lorain App. No. 94CA005952, unreported, 1995 WL 255925. The Ohio Supreme Court affirmed this court's reversal, and the case was remanded to the trial court. *Young v. The Morning Journal* (1996), 76 Ohio St.3d 627, 669 N.E.2d 1136. Defendants again moved for summary judgment on February 28, 1997, and the trial court granted their motion on July 28, 1997. Plaintiff timely appealed to this court.

## II

### A

██ Plaintiff's first assignment of error is that the trial court incorrectly concluded that plaintiff was a public figure for defamation purposes. Whether a person is a public figure is a question of law for the court. See *Milkovich v. News–Herald* (1984), 15 Ohio St.3d 292, 294, 15 OBR 424, 425–426, 473 N.E.2d 1191, 1193. In the defamation context, a "public figure" has been defined by the United States Supreme Court as follows:

" 'For the most part those who attain this status [as a public figure] have assumed roles of especial prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to

influence the resolution of the issues involved.' " *Id.* at 295, 15 OBR at 426–427, 473 N.E.2d at 1194, quoting *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 345, 94 S.Ct. 2997, 3009, 41 L.Ed.2d 789, 808.

 According to plaintiff, he was not a public figure for purposes of Allen's article, either because he was not a public figure at all or because he was a public figure for limited purposes that did not include his activities as a private attorney.

In their motion for summary judgment, defendants argued that plaintiff was a public figure for purposes of this action due to his having been in charge of the Lorain County Metropolitan Enforcement Group, a narcotics investigative unit known as the MEG unit, from 1976 to 1991. Defendants submitted evidence that, between 1973 and 1993, approximately fifty newspaper articles mentioning plaintiff had appeared in The Morning Journal. Most often he was mentioned with reference to his position with the MEG unit. Some articles mentioned him in more detail than others, describing plaintiff's involvement in particular issues and controversies having to do with the MEG unit; his personal, professional, and academic history and achievements; and his participation in a lawsuit through which he and others appealed their dismissals from the MEG unit when it was transferred to another department. This court concludes that the evidence submitted by defendants, undisputed by plaintiff, was sufficient to establish that he was a public figure for purposes of this action, having achieved a prominent position in the community by virtue of his well-publicized involvement in the running of the MEG unit and the issues surrounding it. Plaintiff's first assignment of error is overruled.

## B

 Plaintiff's second assignment of error is that the trial court incorrectly determined that plaintiff had not produced sufficient evidence of actual malice to defeat defendants' motion for summary judgment. In reviewing a trial court's ruling on a motion for summary judgment, this court applies the same standard a trial court is required to apply in the first instance: whether there were any genuine issues of material fact and whether the moving party was entitled to judgment as a matter of law. *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121, 1122–1123. A party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429–430, 674 N.E.2d 1164, 1170–1172. Then, and only then, is there a reciprocal burden on the nonmoving party to respond by showing that there are genuine issues of material fact to be tried. *Id.*

■■ In order to prevail, a public-figure plaintiff in a defamation action must prove, by clear and convincing evidence, that the defamatory statement in question was made with actual malice. See *Milkovich v. The News–Herald* (1984), 15 Ohio St.3d 292, 294, 15 OBR 424, 425–426, 473 N.E.2d 1191, 1193. Actual malice in this context is "actual knowledge that the statement was false, or * * * a high degree of awareness of its probable falsity." *Varanese v. Gall* (1988), 35 Ohio St.3d 78, 518 N.E.2d 1177, paragraph one of the syllabus. See, also, *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 279–280, 84 S.Ct. 710, 725–726, 11 L.Ed.2d 686, 706–707, and *St. Amant v. Thompson* (1968), 390 U.S. 727, 731, 88 S.Ct. 1323, 1325–1326, 20 L.Ed.2d 262, 267.

Allen, the author of the allegedly defamatory article, testified in an affidavit and at a deposition that, at the time she wrote the article, she did not know of another James Young practicing law in Lorain County, was not aware of plaintiff's middle initial, and believed that the journal entry she had seen referred to plaintiff. According to her, she called plaintiff to obtain a comment from him on the contempt charge but was unable to reach him. She testified that, although there had been no rush to print the article, neither had she seen any reason to delay its publication.

■ Plaintiff argued that a genuine issue of material fact existed regarding whether Allen was aware that her article was false or probably false in its identification of him as the attorney facing the contempt charge. Subjective belief in the truth of a statement insulates a defendant from liability in defamation when the plaintiff is a public figure. See *Varanese v. Gall, supra,* 35 Ohio St.3d at 80, 518 N.E.2d at 1180–1181. See, also, *Harte–Hanks Communications, Inc. v. Connaughton* (1989), 491 U.S. 657, 688, 109 S.Ct. 2678, 2696, 105 L.Ed.2d 562, 589. Even a departure from reasonably prudent conduct by a reporter does not demonstrate actual malice; rather, there must be evidence that the reporter had serious doubts as to the truth of her publication. See *Harte–Hanks Communications, Inc., supra.* Plaintiff's burden, therefore, was to offer or point to sufficient evidence to permit a reasonable factfinder to find, by clear and convincing evidence, that Allen seriously doubted the truth of her article. See *Varanese v. Gall, supra,* 35 Ohio St.3d at 80, 518 N.E.2d at 1180–1181.

In his brief to the trial court, plaintiff pointed to evidence that he claimed could have been found by a reasonable factfinder to be clear and convincing evidence that Allen had known that her article was false or probably false. That evidence included Allen's failure to include the attorney's middle initial, her addition of "Amherst" to the attorney's name, her failure to check the local telephone book to verify plaintiff's middle initial, her failure to delay publication until further investigation could be undertaken, her statement that she had not intended to ask plaintiff to confirm the contempt charge against him if she reached him for

comment, her statement that she was unaware of a form or style book for reporters, and the fact that other members of her office had written articles about James C. Young.[2]

First, Allen's naming of plaintiff in her article, along with her failure to check a telephone book and her lack of intent to ask plaintiff to verify the contempt charge against him, is consistent with her testimony that she believed plaintiff was, in fact, the attorney named in the journal entry. Second, the failure to wait and further investigate the identity of the named attorney was also consistent with that testimony and could not, by itself, rise to the level of actual malice. See *Varanese v. Gall, supra*, 35 Ohio St.3d at 84, 518 N.E.2d at 1183–1184.[3] Third, even if plaintiff could establish that other members of Allen's office knew the difference between James C. Young and James H. Young, it would not show that Allen also must have known that difference and that she, therefore, acted with actual malice. Finally, plaintiff has failed to argue how Allen's lack of awareness of a style or form book for reporters is relevant to the issue of actual malice. In sum, the best that this evidence could produce for plaintiff, taken together, would still be insufficient, as a matter of law, to constitute clear and convincing evidence that Allen acted with actual malice. Plaintiff, therefore, failed to present or point to evidence demonstrating a genuine issue of material fact for trial regarding the element of actual malice. His second assignment of error is overruled.

## III

Plaintiff's assignments of error are overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

SLABY, P.J., and MAHONEY, J., concur.

MARY CACIOPPO, J., retired, of the Ninth Appellate District, sitting by assignment.

---

2. Plaintiff has pointed to other evidence in his brief to this court as indicative of a triable issue of fact with respect to whether Allen acted with actual malice; not having been pointed to in his trial court brief, however, this evidence may not be properly considered on appeal.

3. Plaintiff has also argued to this court that Allen failed to take certain kinds of corrective action following the publication of the article and that this evidence could have indicated actual malice. Not only was this argument not raised in his brief to the trial court, but he has not shown how Allen's behavior subsequent to the article's publication might have shown that Allen acted with actual malice at the time she submitted the article for publication. See *Varanese v. Gall, supra*, 35 Ohio St.3d at 80, 518 N.E.2d at 1180–1181.

EDWARD J. MAHONEY, J., retired, of the Ninth Appellate District, sitting by assignment.