TALLEY, Appellant and Cross–Appellee,

v.

WHIO TV–7 et al., Appellees and Cross–Appellants.

[Cite as *Talley v. WHIO TV–7* (1998), 131 Ohio App.3d 164.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 16863.

Decided Nov. 6, 1998.

166

*Ronald L. Talley*, pro se.

*Robert E. Portune*, for appellee and cross–appellant, WHIO TV–7.

*Andrew C. Storar* and *Michael W. Sandner*, for appellee and cross–appellant WDTN TV–2.

GRADY, Judge.

Ronald L. Talley appeals from a summary judgment entered in favor of defendants, WHIO TV–7 ("WHIO") and WDTN TV–2 ("WDTN"), on Talley's claim of defamation.

On November 24, 1994, Talley stabbed his wife, Margo Talley, numerous times with a knife. Hospital records demonstrate that Talley inflicted a substantial number of wounds, although there is disagreement regarding the specific number. Talley, his wife, and step-daughter, who had attempted to aid her mother

during the attack, were admitted to Good Samaritan Hospital for treatment of wounds incurred during the incident.

The grand jury indicted Talley on one count of attempted murder and one count of felonious assault. Talley pled guilty to the charge of attempted murder, and the felonious assault charge was dismissed pursuant to a plea agreement. On November 17, 1995, the judge sentenced Talley to seven to twenty-five years for attempted murder.

WHIO and WDTN reported on Talley's plea and subsequent sentencing on that same day. Although review of the taped court proceedings demonstrates that the specific number of Margo Talley's stab wounds was not discussed during the plea and sentencing, both WHIO and WDTN reported that the number of wounds was approximately eighty. The defendants later stated that they obtained that number from law enforcement officials.

Talley brought defamation claims against WHIO and WDTN, alleging that the information they broadcast about the number of stab wounds was false and that the stations' reports of this false information was defamatory and injured his reputation. The defendants denied liability. Talley and both defendants thereafter filed motions for summary judgment.

The trial court overruled Talley's motion for summary judgment, but sustained WHIO's and WDTN's motions. The trial court found that Talley had failed to plead facts which could reasonably support a conclusion that WHIO and WDTN were negligent in their investigation and broadcast of the number of times he stabbed his wife. The finding was predicated on the court's holding that Talley was a private person and not a public figure, which WHIO and WDTN had argued was the proper basis for determining the duty of care that they owed him.

Talley appealed from the summary judgment. WHIO and WDTN cross-appealed, arguing that the trial court should have applied the limited purpose public figure test rather than a negligence standard in analyzing their potential liability to Talley.

## TALLEY'S ASSIGNMENT OF ERROR

"The trial court erred in failing to enter into the record plaintiff's filings that demonstrate issues of material fact in dispute, in opposition to defendants' motion for summary judgment."

When a party moves for summary judgment and supports its motion with sufficient evidentiary material, the party opposing the motion has the burden to respond with evidentiary materials setting forth specific facts showing that a genuine issue of material fact remains for determination. *Jackson v. Alert Fire & Safety Equip., Inc.* (1991), 58 Ohio St.3d 48, 51–52, 567 N.E.2d 1027, 1030–1032.

Talley claims on appeal that he attempted to file evidentiary material in opposition to the stations' motions for summary judgment with the trial court, but that the court did not accept the material.

Civ.R. 5(E) states the procedure for filing pleadings and other papers is as follows: "The filing of pleadings and other papers with the court, as required by these rules, shall be made by filing them with the clerk of court, except that the judge may permit the papers to be filed with the judge, in which event the judge shall note the filing date on the papers and forthwith transmit them to the office of the clerk."

■ This rule gives considerable discretion to the trial court, which reasonably may require some demonstration of need before it accepts papers for filing. Talley now claims that he could not rely on the clerk to accept the papers, but the record does not reflect that he either told the court of his concerns or that he obtained prior leave to file those papers with the court when he attempted to do so. No abuse of discretion is demonstrated by the court's refusal to accept the papers for filing when Talley proffered them.

■ Even had the court accepted the evidence that Talley attempted to offer, it would have made no difference in the outcome.

The stations supported their motions for summary judgment with affidavits of their reporters, who stated that they obtained the information that Talley had stabbed his wife eighty times from law enforcement authorities and they believed it to be true when they reported it. The stations also supported their motions with affidavits of experienced journalists, who had no connection with these events and who stated that the reporters' acts were consistent with regular journalistic practice. If true, that evidence would demonstrate that the defendants were neither negligent nor reckless, which is required to show that they breached the duty that the court held that they owed to Talley. It would likewise prevent a finding of actual malice, which is the standard the trial court should have applied.

The evidentiary material that Talley claims he attempted to offer the court for filing in opposition to the defendants' motions for summary judgment is attached to his brief on appeal. It consists of documents that identify witnesses who would testify that the stations' reporters were in the courtroom when Talley entered his plea. The probative value of those statements fails to contradict the evidence the defendant stations offered because, under any interpretation, it cannot demonstrate that they were either negligent or reckless in broadcasting the number of times that Talley had stabbed his wife, that they acted maliciously, or even that the number they reported was untrue.

■ Once the stations moved for summary judgment and filed the affidavits in support of their motions, Talley was required to respond with evidence demonstrating a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264. Talley offered no such evidence in opposition to the stations' affidavits, other than his own statement that the affidavits of the reporters were false. Such conclusory assertions by a party, standing alone, fail to satisfy the requirement.

The trial court did not err when it granted the stations' motions for summary judgment on the record before it. Talley's assignment of error is overruled.

## WHIO'S CROSS–ASSIGNMENT OF ERROR

"The trial court erred as a matter of law in failing to find that plaintiff–appellant Ronald Talley was a 'public figure' for purposes of determining the standard of liability applicable to WHIO'S broadcast of the Talley Story."

## WDTN'S CROSS–ASSIGNMENT OF ERROR

"The trial court erred in failing to hold the plaintiff–appellant, Ronald Talley, a convicted attempted murderer, to the standard of a public figure for the purposes of his defamation lawsuit which arose out of the report of his sentencing."

■ Defamation is an invasion of a person's interest in his reputation and good name. Prosser and Keaton, Law of Torts (5 Ed.1984) 773–774, Section 111. Defamation requires proof of an intent to injure a person's reputation or conduct that proximately results in that injury. 35 Ohio Jurisprudence 3d (1982), Defamation and Privacy, Sections 54–59.

■ There are four classifications into which a plaintiff who alleges defamation may fall: (1) a private person, (2) a public official, (3) a public figure, and (4) a limited purpose public figure. Classification is important because it determines the plaintiff's burden of proof. If a court determines that a plaintiff is a private person, the plaintiff can recover if defendant acted negligently in publishing or reporting facts. *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.* (1985), 472 U.S. 749, 766, 105 S.Ct. 2939, 2949, 86 L.Ed.2d 593, 607.

■ A public official cannot recover for defamation unless the official proves that the defendant made the statement with actual malice. *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 279–280, 84 S.Ct. 710, 725–726, 11 L.Ed.2d 686, 706–707. Actual malice exists when a defendant makes the statement with knowledge of the statement's falsity or with reckless disregard of whether it is false. *Id.* Recklessness requires evidence that the defendant had serious doubts

whether the statement was true.  3 Restatement of the Law 2d, Torts (1977), Section 580A, Comment *h*.

The *New York Times* standard also applies to a public figure.  Public figure status comes from the plaintiff's position alone, or from some purposeful activity that thrusts that person "into the vortex of an important public controversy." *Curtis Publishing Co. v. Butts* (1967), 388 U.S. 130, 155, 87 S.Ct. 1975, 1991, 18 L.Ed.2d 1094, 1111.  A public figure can recover if he proves that the defendant made the statement with actual malice.

A limited purpose public figure is a person who becomes a public figure for a specific range of issues. *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 351, 94 S.Ct. 2997, 3012–3013, 41 L.Ed.2d 789, 811–812.  Whether a person is a limited purpose public figure is determined by examining that person's participation in the controversy from which the alleged defamation arose, and whether he has attained a general notoriety in the community by reason of that participation.

WHIO and WDTN contend that Talley is a limited purpose public figure because of his criminal acts.  A criminal defendant can be considered a public figure where (1) the defendant's conduct is a legitimate matter of public interest to the community, (2) "the press has publicized his conduct in part as a result of his own efforts to obtain publicity," and (3) defendant's conduct has "made him the target of a criminal proceeding about which the public has a need for information and interpretation." *Orr v. Argus–Press Co.* (C.A.6, 1978), 586 F.2d 1108, 1116.

In order to determine whether Talley is a limited purpose public figure, this court must examine whether acts of domestic violence and a charge of attempted murder are matters of public controversy, and the extent of Talley's participation in any such controversy.

"To be 'public,' the dispute must affect more than its immediate participants." *Marcone v. Penthouse Internatl. Magazine for Men* (C.A.3, 1985), 754 F.2d 1072, 1083.  Although domestic violence involves individuals in their private lives, its costs affect the public dramatically.  Not only the immediate physical injuries to the victim but also the emotional injuries inflicted on the family involved carry long term costs to society that are incalculable, but substantial.

Talley attempted to murder his wife by repeatedly stabbing her.  Murder is a heinous crime that affects the public because of its disruption of society.  Thus, the alleged defamation concerns a public controversy.  Talley thrust himself into the vortex of that controversy by voluntarily attacking his wife.  Talley's heinous act "invite[d] comment and attention, and even though he does

not directly try or even want to attract the public's attention, he is deemed to have assumed the risk of such attention." *Id.*

The United States Supreme Court has rejected the idea that any person who commits a crime becomes a limited purpose public figure in regard to any alleged defamation arising from that crime. *Wolston v. Reader's Digest Assn., Inc.* (1979), 443 U.S. 157, 168, 99 S.Ct. 2701, 2707–2708, 61 L.Ed.2d 450 460–461. The situation in *Wolston* is distinguishable because Wolston was merely indicted, not convicted, of a crime. Talley, however, has pled guilty to attempted murder.

Talley's classification as a limited purpose public figure arises from his active criminal act of attempted murder. When he formulated the intent to commit this crime, he assumed the risk of exposing himself to the attention of the press that arises from such a heinous act.

The trial court erred in holding that Talley is a private person for purposes of his defamation claim, which then caused the court to apply the lower burden of proof applicable to a private person and to find that WHIO's and WDTN's conduct need merely be unreasonable to be actionable. Talley should have been classified as a limited purpose public figure in connection with his conviction for attempted murder. He thus would have been required to prove malice in order to support his allegation of defamation.

WHIO's and WDTN's assignments of error are sustained. The error is nevertheless harmless because the malice standard that the court should have applied imposes a more stringent burden of proof on Talley, which, on these facts, he could not possibly satisfy. Therefore, no action by this court is required.

## CONCLUSION

The judgment of the trial court is affirmed.

*Judgment affirmed.*

FREDERICK N. YOUNG, P.J., and CACIOPPA, J., concur.

MARY CACIOPPO, J., retired, of the Ninth Appellate District, sitting by assignment.