**GILBERT et al., Appellant and Cross–Appellee; Gilbert, Cross–Appellee,**

v.

**WNIR 100 FM et al., Appellees and Cross–Appellants;
WTOU Touch 1350 et al., Appellees.**

[Cite as *Gilbert v. WNIR 100 FM* (2001), 142 Ohio App.3d 725.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 20299.

Decided May 9, 2001.

726

730

732

*Robert Meeker* and *Jason A. Butterworth,* for appellant and cross-appellees.
*Richard Goehler* and *Jill Meyer Vollman,* for appellees and cross-appellants.

BATCHELDER, Presiding Judge.

Appellant, Edward L. Gilbert, appeals the entry of summary judgment against him in the Summit County Court of Common Pleas. Appellees, WNIR 100 FM, Bill Hall, Tom Nagel (a.k.a. Thomas E. Erickson), Howard Chizek, and Joe Finan (collectively, "the WNIR defendants"), cross-appeal the trial court's denial of their motion to dismiss and denial of their motion for summary judgment on the claims of Delphinia Gilbert, cross-appellee. We reverse.

I

On the morning of November 26, 1997, Dr. Margo Prade's body was discovered. She had been murdered. In the weeks following the discovery of Dr. Prade's body, speculation proliferated about who the killer might be. Between January and March 1998, Mr. Gilbert and his wife, Delphinia Gilbert, claim, various allegations were made regarding their involvement in the murder during radio broadcasts on WNIR 100 FM. In February 1998, Mr. Prade, Dr. Prade's ex-husband, was arrested and charged with aggravated murder in connection with Dr. Prade's death.

On March 9, 1998, the Gilberts filed suit against various radio stations including WNIR 100 FM and employees of those radio stations. The various other radio stations and their employees were dismissed, leaving the cross-appellants herein. On April 14, 2000, the WNIR defendants filed a motion for summary judgment. The Gilberts filed a brief in opposition on May 18, 2000. The WNIR defendants filed a reply memorandum on May 31, 2000. On June 8, 2000, the trial court ordered the WNIR defendants to reduce their voluminous motion for summary judgment to thirty pages by June 16, 2000. The WNIR defendants complied, filing a complying motion for summary judgment on June 15, 2000. The Gilberts responded to the WNIR defendants' reply memorandum on June 27, 2000. On September 5, 2000, the trial court entered summary judgment in favor of the WNIR defendants on Mr. Gilbert's claims, finding Mr. Gilbert to be a public figure. The trial court also found material issues of fact to remain regarding Mrs. Gilbert's claims. The trial court denied the WNIR defendants' motion to dismiss based on destruction of evidence on September 14, 2000. Mrs. Gilbert dismissed her remaining claims without prejudice on October 2, 2000. This appeal of the trial court's entry of summary judgment in favor of the WNIR defendants on Mr. Gilbert's claims followed.

II

Appellant, Mr. Gilbert, asserts one assignment of error. Cross-appellants, the WNIR defendants, assert two assignments of error. We will address each in turn, first addressing appellant's assignment of error.

A.

## APPELLANT'S ASSIGNMENT OF ERROR

"The trial court erred in finding that Edward Gilbert is a public figure for the purpose of *Gertz v. Robert Welch, Inc.*"

Mr. Gilbert avers that the trial court erred as a matter of law in finding him to be a public figure based on the facts adduced herein. We agree.

Pursuant to Civ.R. 56(C), summary judgment is proper if:

"(1) No genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471–472, 364 N.E.2d 267, 274.

Appellate review of a lower court's entry of summary judgment is *de novo*, applying the same standard used by the trial court. *McKay v. Cutlip* (1992), 80 Ohio App.3d 487, 491, 609 N.E.2d 1272, 1274–1275. "Questions of law are reviewed *de novo*." *Long Beach Assn., Inc. v. Jones* (1998), 82 Ohio St.3d 574, 576, 697 N.E.2d 208, 209.

The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of his motion. *Id.* Once this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. *Id.* The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that shows a genuine dispute over the material facts exists. *Henkle v. Henkle* (1991), 75 Ohio App.3d 732, 735, 600 N.E.2d 791, 793–794. In ruling on a motion for summary judgment in a defamation action, the court must apply the standard of clear and convincing evidence as to the element of fault. See *Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–2514, 91 L.Ed.2d 202, 216; *Lansdowne v. Beacon Journal Pub. Co.* (1987), 32 Ohio St.3d 176, 180–181, 512 N.E.2d 979, 983–984. However, the standard of proof for all of the other elements of a private plaintiff's defamation claim is preponderance of

the evidence. *Davis v. Jacobs* (1998), 126 Ohio App.3d 580, 582–584, 710 N.E.2d 1185, 1186.

This court has previously held that a defamation claim is composed of five elements: "(1) a false and defamatory statement, (2) about plaintiff, (3) published without privilege to a third party, (4) with fault of at least negligence on the part of the defendant, and (5) that was either defamatory *per se* [within the limits imposed by the United States Supreme Court in *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.* (1985), 472 U.S. 749, 762–763, 105 S.Ct. 2939, 2946–2948, 86 L.Ed.2d 593, 604–605 (where the one defamed is not a public figure and 'the defamatory statements do not involve matters of public concern,' 'presumed and punitive damages in defamation cases absent a showing of "actual malice" [do] not violate the First Amendment') ] or caused special harm to the plaintiff." *Gosden v. Louis* (1996), 116 Ohio App.3d 195, 206, 687 N.E.2d 481, 487.

We will first address Mr. Gilbert's assignment of error and then address the issues presented in the WNIR defendants' brief as independent grounds for the affirmance of the trial court's entry of summary judgment. See App.R. 3(C)(2); R.C. 2505.22; *Morgan v. Cincinnati* (1986), 25 Ohio St.3d 285, 290, 25 OBR 337, 341, 496 N.E.2d 468, 473 ("appellee preserved possible error for review by the court of appeals to prevent a reversal by separately arguing same within its brief").

## APPELLANT'S ARGUMENT FOR REVERSAL

### 1

### Mr. Gilbert's Status under Defamation Law

Mr. Gilbert asserts that the trial court erred in finding him to be a public figure and therefore erred in requiring him to present clear and convincing evidence of actual malice. We agree.

■ "[A]s is the case with questions of privilege generally, it is for the trial judge in the first instance to determine whether the proofs show respondent to be a 'public official.'" *Rosenblatt v. Baer* (1966), 383 U.S. 75, 88, 86 S.Ct. 669, 677, 15 L.Ed.2d 597, 606, fn. 15 ("Such a course will both lessen the possibility that a jury will use the cloak of a general verdict to punish unpopular ideas or speakers, and assure an appellate court the record and findings required for review of constitutional decisions"). Hence, whether one is a public figure is necessarily a question of law for the trial judge to determine. *Young v. Morning Journal* (1998), 129 Ohio App.3d 99, 102, 717 N.E.2d 356, 358–359.

■ If the party defamed is either a public official or public figure, the plaintiff must prove actual malice to recover on a defamation claim. *Gertz v.*

*Robert Welch, Inc.* (1974), 418 U.S. 323, 334–336, 94 S.Ct. 2997, 3004–3005, 41 L.Ed.2d 789, 802–803. One may be designated a public figure for the purposes of defamation law "on either of two alternative bases. In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Id.* at 351, 94 S.Ct. at 3013, 41 L.Ed.2d at 812. Further, "[h]ypothetically, it may be possible for someone to become a public figure through no purposeful action of his own, but the instances of truly involuntary public figures must be exceedingly rare." *Id.* at 345, 94 S.Ct. at 3009, 41 L.Ed.2d at 808. If the defamed party is a private individual, Ohio may define the appropriate standard for liability so long as liability is not imposed without fault. See *id.* at 347, 94 S.Ct. at 3010–3011, 41 L.Ed.2d at 809. In terms of defamation of a private individual, Ohio requires a showing of at least negligence. *Dale v. Ohio Civ. Serv. Emp. Assn.* (1991), 57 Ohio St.3d 112, 114, 567 N.E.2d 253, 255–256.

Hence, the first issue is whether Mr. Gilbert is a public official, public figure or a private person, and accordingly, whether Mr. Gilbert must show actual malice or negligence to prevail on his defamation claims. The WNIR defendants aver that Mr. Gilbert is a public figure because Mr. Gilbert's name has been mentioned in newspaper articles and he has held press conferences regarding cases in which he has served as legal counsel. Further, he has been involved in politics, serving as a precinct committee person for the Democratic Party, on the central committee for the Democratic Party, and on the finance committee for two judicial campaigns. He is also involved in various civic and community organizations such as the United Negro College Fund, the Masonic Order, and Sigma Pi Phi. He has represented the National Association for the Advancement of Colored People. He is also a member of various bar associations, such as the Akron and Ohio Bar Associations. He was briefly mentioned on the last page of a three-page article in *U.S. News and World Report* regarding race relations in Akron, Ohio.

The WNIR defendants do not aver that Mr. Gilbert is a public official, as he does not hold a public office. However, he may be a public figure or a limited-purpose public figure. Based on the facts presented on summary judgment, we cannot conclude that he is either in regard to the matter herein. Mr. Gilbert has had many high profile cases and has issued press releases regarding them, but this does not render him a public figure. See *Gertz*, 418 U.S. at 351–352, 94 S.Ct. at 3012–3013, 41 L.Ed.2d at 812; *Time, Inc. v. Firestone* (1976), 424 U.S. 448, 454, 96 S.Ct. 958, 965, 47 L.Ed.2d 154, 163, fn. 3 ("Nor do we think the fact that respondent may have held a few press conferences during the divorce proceed-

ings in an attempt to satisfy inquiring reporters converts her into a 'public figure'"). Further, Mr. Gilbert has served in various civic and professional organizations, but we should "not lightly assume that a citizen's participation in community and professional affairs rendered him a public figure for all purposes." *Gertz*, 418 U.S. at 352, 94 S.Ct. at 3013, 41 L.Ed.2d at 812. Mr. Gilbert has appeared in newspaper articles and publications in reference to legal actions in which he has represented one of the parties and his civic activities. In *Gertz*, the United States Supreme Court reasoned that although the attorney therein had "published several books and articles on legal subjects," he was not a general-purpose public figure as "he had achieved no general fame or notoriety in the community." *Id.* at 351–352, 94 S.Ct. at 3013, 41 L.Ed.2d at 812. Further, Chief Justice Burger, dissenting in *Gertz* on the basis that negligence should not be required in private defamation claims, stated an important policy consideration:

"The petitioner here was performing a professional representative role as an advocate in the highest tradition of the law, and under that tradition the advocate is not to be invidiously identified with his client. The important public policy which underlies this tradition—the right to counsel—would be gravely jeopardized if every lawyer who takes an 'unpopular' case, civil or criminal, would automatically become fair game for irresponsible reporters and editors who might, for example, describe the lawyer as a 'mob mouthpiece' for representing a client with a serious prior criminal record, or as an 'ambulance chaser' for representing a claimant in a personal injury action." *Id.* at 355, 94 S.Ct. at 3015, 41 L.Ed.2d at 814 (Burger, J., dissenting); see, also, *Spence v. Flynt* (Wy.1991), 816 P.2d 771, 776–777 ("A professional person, who may be a 'public figure' for some purposes, should be free to offer his services to a client as a private professional without being subjected to public figure defamation. To hold otherwise would have a chilling effect upon attorneys who undertake to represent clients in difficult, unpopular, high profile, or sensational types of cases. We can foresee also detriment to those potential clients being unable to employ skilled, capable, specialist lawyers who have achieved some fame and reputation because of their legal and trial abilities and are claimed to have achieved public figure status").

The WNIR defendants have not demonstrated in their motion for summary judgment that Mr. Gilbert has achieved any more notoriety than any well-known attorney in the Akron legal community. Based on the evidence adduced upon summary judgment, we cannot conclude that Mr. Gilbert has utilized press coverage for personal aggrandizement, or to such a repeated and pervasive extent that he has become a public figure. "Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life."

▆▆▆▆▆▆▆▆▆▆▆▆

*Gertz,* 418 U.S. at 352, 94 S.Ct. at 3013, 41 L.Ed.2d at 812. Hence, based on the facts presented on summary judgment, we cannot conclude that, as a matter of law, Mr. Gilbert was a general-purpose public figure. We next must determine whether he was a limited-purpose public figure.

▆▆▆▆▆ One may become a limited-purpose public figure if one "voluntarily injects himself or is drawn into a particular public controversy," thereby becoming a public figure for a limited range of issues. *Id.* at 351, 94 S.Ct. at 3013, 41 L.Ed.2d at 812; *Time, Inc.,* 424 U.S. at 454, 96 S.Ct. at 965, 47 L.Ed.2d at 163 (noting that the controversy must be a "public controversy"). Mr. Gilbert did not thrust himself into the investigation of the murder of Mrs. Prade; rather, the investigation was, based on the facts adduced upon summary judgment, thrust upon him. Hence, because he "did not thrust himself into the vortex of this * * * issue, nor did he engage the public's attention in an attempt to influence its outcome," we cannot conclude that he was a limited-purpose public figure in regard to the instant matter. *Gertz,* 418 U.S. at 352, 94 S.Ct. at 3013, 41 L.Ed.2d at 812. Moreover, "[c]learly, those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure." *Hutchinson v. Proxmire* (1979), 443 U.S. 111, 135, 99 S.Ct. 2675, 2688, 61 L.Ed.2d 411, 431.

▆▆▆ In *Young v. Morning Journal* (1998), 129 Ohio App.3d 99, 103, 717 N.E.2d 356, 359, this court concluded that an attorney was a public figure due to his having been in charge of a narcotics investigative unit shortly preceding the defamatory publication. Moreover, the publication involved a possible charge of contempt of court, implicating issues relating to his competency in his former position in the narcotics investigative unit. *Id.* Accordingly, this court concluded that "he was a public figure for purposes of *this* action." (Emphasis added.) *Id.* Unlike the attorney in *Young,* Mr. Gilbert was not involved in a high-profile criminal task force just prior to the allegedly defamatory statements, and there is no nexus between Mr. Gilbert's possible public-figure status on issues such as race relations and the murder of Dr. Prade. See *Talley v. WHIO TV–7* (1998), 131 Ohio App.3d 164, 170, 722 N.E.2d 103, 107 ("Whether a person is a limited purpose public figure is determined by examining that person's participation in the controversy from which the alleged defamation arose, and whether he has attained a general notoriety in the community by reason of that participation"); *Dameron v. Washington Magazine, Inc.* (C.A.D.C.1985), 779 F.2d 736, 741 (applying a three-part test as to whether one is a limited purpose public figure: "Under this test the court must determine that there is a public controversy; ascertain that the plaintiff played a sufficiently central role in that controversy; and find that the alleged defamation was germane to the plaintiff's involvement in the controversy"). While Mr. Gilbert may be a limited-purpose public figure for

some purposes, he was not a limited-purpose public figure regarding the murder of Dr. Prade based on the facts adduced on summary judgment. Accordingly, we determine that based on the facts as set forth upon summary judgment, Mr. Gilbert is not a public figure or a limited-purpose public figure with regard to the issues herein and, hence, need not produce evidence of actual malice on that account.

## APPELLEES' ALTERNATE THEORIES FOR AFFIRMANCE

### 2

### The Public Interest Qualified Privilege

The WNIR defendants aver that the trial court's conclusion that Mr. Gilbert must show actual malice is, in the alternative, supported by the common-interest qualified privilege. Hence, they assert that even if we find Mr. Gilbert not to be a public figure, we must affirm the trial court's entry of summary judgment because Mr. Gilbert must show actual malice under the common-interest qualified privilege. We disagree.

"The defense of qualified privilege is deeply rooted in public policy. It applies in a variety of situations where society's interest in compensating a person for loss of reputation is outweighed by a competing interest that demands protection. Accordingly, the privilege does not attach to the communication, but to the occasion on which it is made. It does not change the actionable quality of the publication, but heightens the required degree of fault. This affords some latitude for error, thereby promoting the free flow of information on an occasion worthy of protection." *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council* (1995), 73 Ohio St.3d 1, 8–9, 651 N.E.2d 1283, 1290.

The essential elements necessary to establish a qualified privilege are " ' "good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only." ' " *Id.* at 8, 651 N.E.2d at 1290, quoting 33 American Jurisprudence (1941), 124–125, Libel and Slander, Section 126. Such a qualified privilege may be overcome by "actual malice." *Costanzo v. Gaul* (1980), 62 Ohio St.2d 106, 111, 16 O.O.3d 134, 137, 403 N.E.2d 979, 983.

We can discern no qualified privilege applicable herein. News media have generally been found to possess a qualified privilege to report *actual* facts concerning the commission of a crime, the arrest of an accused person, and the charges brought against that person, so long as report does not assert that the accused is guilty of the crime charged. *Weisburgh v. Mahady* (1986), 147 Vt. 70, 72–73, 511 A.2d 304, 305–307; accord *Lami v. Pulitzer Publishing Co.* (Mo.App.

1986), 723 S.W.2d 458, 459; *Steer v. Lexleon, Inc.* (1984), 58 Md.App. 199, 206–208, 472 A.2d 1021, 1025–1026. This privilege is based on the "vital and legitimate concern in the affairs of government and in the performance of governmental officials and agencies." *Steer,* 58 Md.App. at 205, 472 A.2d at 1024; accord *Nabkey v. Booth Newspapers, Inc.* (1985), 140 Mich.App. 507, 512–513, 364 N.W.2d 363, 365–366.

Here, the reports of Mr. Gilbert's arrest and flight from the jurisdiction were untrue. Moreover, the WNIR defendants have failed to show that the statements were from a police source, while the Gilberts have produced evidence that the statements were speculation by those who called WNIR radio talk programs and WNIR personnel. Construing the facts in a light most favorable to the nonmoving party, the statements broadcast by WNIR were completely false and did not report any official action or proceeding. The Gilberts were not involved with Dr. Prade's murder, had not been arrested, and were not attempting to flee the jurisdiction. Hence, no qualified privilege can be adduced from the facts here to date presented in the proceedings below.

### 3

### False Statements

The WNIR defendants assert that the trial court's entry of summary judgment should be affirmed because the Gilberts failed to show that WNIR broadcast any false statements. We disagree.

 If the plaintiff in a defamation action is a private individual and the matter is not of public concern, the common-law rule that the defendant bears the burden of proving the truth of the allegedly defamatory statements may remain constitutionally permissible. *Philadelphia Newspapers, Inc. v. Hepps* (1986), 475 U.S. 767, 775–776, 106 S.Ct. 1558, 1563–1564, 89 L.Ed.2d 783, 792. However, where the plaintiff is a private person but the matter is of public concern, as murder is, see discussion of damages below, the plaintiff bears the burden of establishing the falsity of the statement. *Id.* at 776, 106 S.Ct. at 1563–1564, 89 L.Ed.2d at 792. Here, the WNIR defendants challenge the quantum of evidence rather than its falsity. They aver that because the statements were not recorded or recalled in their complete form with specificity, Mr. Gilbert failed to meet his burden on either the "very existence" of the statements or the "falsity" thereof.

In her deposition, Mrs. Gilbert stated that she had heard numerous defamatory statements broadcast by WNIR. Specifically, upon deposition by the WNIR defendants, the following colloquy was had:

"Q. What have you heard [on WNIR]?

"A. I heard that—that I was—had been arrested, and that upon my arrest, I was taken to a psychiatric hospital.

"* * *

"Q. Tell me what else you heard.

"A. First, I heard I was arrested, supposedly arrested trying to flee the country. I heard that I was—that I—also, I heard that I was arrested in New York. It was also stated that I was arrested in Cincinnati. It was also stated that I was arrested in Michigan. It was stated that my—that I had put my dog on Dr. Prade to harm her. * * * They said wherever there's smoke, there's fire.

"* * *

"Q. * * * When did you hear announced on WNIR that you had been arrested?

"A. January 5.

"Q. What was the precise comment that you heard?

"A. That there was late-breaking news, that there has been an arrest made in the murder of Dr. Margo Prade.

"Q. Anything more to the statement?

"A. Something to the effect that arrested were local attorney Edward L. Gilbert and his wife Delphinia Gilbert."

 Mr. Gilbert testified that he had heard a commentator or newsperson on WNIR state, " 'More to come on the arrest of a prominent black attorney and his wife for the murder of Dr. Prade.' " Mr. Gilbert further testified that these statements were "just * * * malicious intentional blatant lie[s]." As the Gilberts were not arrested for the murder of Dr. Prade and were not involved in Dr. Prade's murder, these statements are false statements concerning Mr. Gilbert. Further, as Mrs. Gilbert testified to having heard the statements on WNIR, we cannot conclude that Mr. Gilbert did not show the existence of the statements. Construing the facts in a light most favorable to the nonmoving party, we cannot conclude that Mr. Gilbert failed to show that a material issue of fact remains as to the existence of false statements broadcast on WNIR.

4

Defamatory Statements

The WNIR defendants next aver that the trial court's entry of summary judgment should be sustained because Mr. Gilbert failed to show any defamatory statements concerning him. We disagree.

In a private-figure defamation action, "the plaintiff must prove by clear and convincing evidence that the defendant failed to act reasonably in attempting to discover the truth or falsity or defamatory character of the publication." *Lansdowne*, 32 Ohio St.3d at 180, 512 N.E.2d at 984. Clear and convincing evidence is that " 'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *Id.* at 180–181, 512 N.E.2d at 984, quoting *Cross v. Ledford* (1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus. Falsely charging that one has committed a crime of moral turpitude which subjects the offender to infamous punishment constitutes defamation. *Akron–Canton Waste Oil, Inc. v. Safety–Kleen Oil Serv., Inc.* (1992), 81 Ohio App.3d 591, 601, 611 N.E.2d 955, 962.

The WNIR defendants do not challenge the Gilberts' claims on the element of fault, but rather assert that the statements presented by the Gilberts on summary judgment were not defamatory. Construing the facts in a light most favorable to the Gilberts, statements broadcast by WNIR [1] charged Mr. Gilbert with involvement in the murder of Dr. Prade. The statements were to the effect that the Gilberts had been arrested for that crime and provided theories on the Gilberts' motivation in committing the crime. The proposed motives included Mr. Gilbert having had an affair with Dr. Prade, Mrs. Gilbert having had an affair with Dr. Prade, the Gilberts and Dr. Prade having all had sexual relations with each other, and Mrs. Gilbert having had a relationship with the man Dr. Prade was then dating. The overriding theory was jealousy spawned by some form of love triangle. Further, the statements indicated that the Gilberts had been arrested while attempting to flee the jurisdiction, presumably to avoid prosecution.

The WNIR defendants aver that the statements are subject to an innocent construction. "The 'innocent construction' rule provides that if a statement is 'susceptible to two meanings, one defamatory and one innocent, the defamatory meaning should be rejected, and the innocent meaning adopted.' " *Sethi v. WFMJ Television, Inc.* (1999), 134 Ohio App.3d 796, 808, 732 N.E.2d 451, 459–460, quoting *Yeager v. Local Union 20 Teamsters* (1983), 6 Ohio St.3d 369, 372, 6 OBR 421, 423–424, 453 N.E.2d 666, 669–670. However, we cannot find an innocent construction to the statements that the Gilberts and others aver that they heard on WNIR. The statements were to the effect that the Gilberts had been involved with Dr. Prade's murder and had been arrested for that crime. Although the statements did not specifically indicate that the Gilberts were guilty

---

1. We do not pass upon whether statements made by callers would subject WNIR to liability or whether the defamatory statements must have been made by WNIR employees. This issue has not been raised herein, and if it were, it would not be dispositive, as the Gilberts stated that they heard defamatory statements by both callers and WNIR employees.

of that crime, they did provide numerous theories of motivation, which implied the Gilberts' guilt, and statements to the effect that "wherever there's smoke, there's fire" were heard. Further, the statements indicated that the Gilberts had fled to avoid prosecution. The WNIR defendants assert that the evidence adduced did not show that the statements concerned the Gilberts; however, due to the contradictory statements made as to whether the Gilberts' names were used and the possibility that listeners could adduce who the "prominent black attorney" was based on the facts given at other times during the broadcast, we conclude that a genuine issue of material fact remains in this regard.

5

Publication

The WNIR defendants assert that the Gilberts failed to prove publication of the statements. We disagree.

■■■■■■ "The publication of defamatory matter is an essential element to liability for defamation." *Hecht v. Levin* (1993), 66 Ohio St.3d 458, 460, 613 N.E.2d 585, 587. Publication is " 'communication intentionally or by a negligent act to one other than the person defamed.' 3 Restatement of the Law 2d, Torts (1965), Section 577(1). *Any* act by which the defamatory matter is communicated to a third party constitutes publication. *Id.* at Comment *a.* Also, it is sufficient that the defamatory matter is communicated to one person only, even though that person is enjoined to secrecy. See *id.* at Comment *b.*" (Emphasis *sic.*) *Id.*

■■■ As noted above, the standard for fault in publishing the statements that the Gilberts allege is clear and convincing evidence. Specifically, "the plaintiff must prove by clear and convincing evidence that the defendant failed to act reasonably in attempting to discover the truth or falsity or defamatory character of the publication." *Lansdowne,* 32 Ohio St.3d at 180, 512 N.E.2d at 984. However, "[t]he proper burden of proof for every other element [is] the preponderance [of the evidence] standard." *Davis,* 126 Ohio App.3d at 584, 710 N.E.2d at 1187.

In deposition testimony produced upon summary judgment, Marvin Hodoh stated, "I think it was a caller that called in and said that—that the Gilberts had been arrested in New York, you know, with him trying to get his wife out of the country, wife and dog out of the country." John Wesley Sharp, who publishes a newsletter, stated that the information he "got from WNIR [was] that there was suspicion in the community that Mrs. Gilbert and Mr. Gilbert were involved" with Dr. Prade's murder. Further, he stated that he received information from WNIR that "people thought there was trying to be a cover-up" and that "the

people, in terms of WNIR, the people who were calling in, thought that Mr. Gilbert was using his position as an attorney to suppress [these allegations]."

The WNIR defendants assert that Mr. Gilbert must show publication by clear and convincing evidence. However, as noted above, Mr. Gilbert must show fault on the part of defendants in determining the truth or falsity of the information published or its defamatory character by clear and convincing evidence, but must show publication to another party by only a preponderance of the evidence. Construing the evidence adduced below in a light most favorable to Mr. Gilbert, we cannot conclude that a material issue of fact does not exist as to whether the statements were transmitted to another party. Two persons, other than the allegedly defamed parties, testified to having heard defamatory statements broadcast by WNIR. Accordingly, we find that a genuine issue of material fact remains as to the publication of the alleged statements.

6

Damages

Lastly, the WNIR defendants assert that the trial court's entry of summary judgment should be affirmed because Mr. Gilbert failed to show any damages. We disagree.

If a statement is defamatory *per se,* the party about whom the statement was made may recover presumed damages without showing special harm. *Gosden,* 116 Ohio App.3d at 211, 687 N.E.2d at 491. However, the United States Supreme Court has limited private-party defamation plaintiffs "who do not prove knowledge of falsity or reckless disregard for the truth to compensation for actual injury." *Gertz,* 418 U.S. at 349, 94 S.Ct. at 3012, 41 L.Ed.2d at 811. Although seemingly a broad exclusion, this holding has been limited to matters involving public concern, allowing defamation claims to be brought with presumed damages where the defamation is against a private individual and does not involve a matter of public concern. *Dun & Bradstreet, Inc.,* 472 U.S. at 763, 105 S.Ct. at 2947–2948, 86 L.Ed.2d at 605. Further, if the plaintiff is a private individual and the matter is not of public concern, the plaintiff need not show actual malice to recover punitive damages. *Philadelphia Newspapers, Inc.,* 475 U.S. at 774–775, 106 S.Ct. at 1562–1563, 89 L.Ed.2d at 791. However, if one is a private person and the matter is of public concern, one must show actual malice to recover punitive damages. *Id.*

The matter herein was a criminal investigation of the murder of a preeminent Akron area physician. "Murder is a heinous crime that affects the public because of its disruption of society." *Talley,* 131 Ohio App.3d at 170, 722 N.E.2d at 107. Accordingly, murder is generally a matter of public concern. *Id.*

Thus, we conclude that the Prade murder was a matter of public concern, and therefore, the Gilberts must show damages in the instant action and cannot rely on presumed damages pursuant to defamation *per se*. However, "actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Gertz*, 418 U.S. at 350, 94 S.Ct. at 3012, 41 L.Ed.2d at 811. The WNIR defendants state in their brief to this court that "Mr. Gilbert described [his] injuries as 'pain, suffering, anguish, humiliation, and embarrassment.'" Upon review of the record, we agree with this synopsis. Moreover, these are the very damages envisaged by the United States Supreme Court in *Gertz*. Hence, we conclude that Mr. Gilbert adduced evidence of his damages sufficient to raise a genuine issue of material fact upon summary judgment below.

Mr. Gilbert's assignment of error is sustained. We find the WNIR defendants' arguments for affirmance on other grounds to lack merit.

## B

## CROSS–APPELLANTS' ASSIGNMENTS OF ERROR

### 1

### First Cross–Assignment of Error

"The trial court erred by denying cross-appellants' motion to dismiss for destruction of evidence."

The WNIR defendants assert that the trial court erred in failing to dismiss the Gilberts' case because the Gilberts had destroyed certain invaluable pieces of evidence. We find this argument to be not yet ripe for our review.

"If any party * * * fails to obey an order to provide or permit discovery * * * the court in which the action is pending may * * * dismiss[ ] the action * * *." Civ.R. 37(B)(2)(c). However, "'[j]udicial discretion must be carefully—and cautiously—exercised before [the Ohio Supreme Court] will uphold an outright dismissal of a case on purely procedural grounds.'" *Quonset Hut, Inc. v. Ford Motor Co.* (1997), 80 Ohio St.3d 46, 48, 684 N.E.2d 319, 321, quoting *DeHart v. Aetna Life Ins. Co.* (1982), 69 Ohio St.2d 189, 192, 23 O.O.3d 210, 212, 431 N.E.2d 644, 646–647. Moreover, this extremely harsh sanction is reserved for instances when the attorney's conduct is substantially unreasonable and evidences a complete disregard for the rights of the opposing party or the judicial system. *Sazima v. Chalko* (1999), 86 Ohio St.3d 151, 158, 712 N.E.2d 729, 735.

 "Absent such extreme circumstances, a court should first consider lesser sanctions before dismissing a case with prejudice." *Id.* "The decision to dismiss a case pursuant to Civ.R. 41(B)(1) is within the sound discretion of the trial court." *Quonset Hut, Inc.,* 80 Ohio St.3d at 47, 684 N.E.2d at 321. However, " 'although reviewing courts espouse an ordinary "abuse of discretion" standard of review for dismissals with prejudice, that standard is actually heightened when reviewing decisions that forever deny a plaintiff a review of a claim's merits.' " *Sazima,* 86 Ohio St.3d at 158, 712 N.E.2d at 735, quoting *Jones v. Hartranft* (1997), 78 Ohio St.3d 368, 372, 678 N.E.2d 530. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748, 751. When applying the abuse-of-discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Id.*

The WNIR defendants moved to dismiss the Gilberts' complaint because they aver that the Gilberts failed to comply with a discovery order requiring the production of tape recordings which the Gilberts' may have made of WNIR broadcasts. The Gilberts did provide some tapes in response to this order, but the WNIR defendants aver that the Gilberts had additional tapes, which they have destroyed. The trial court denied the WNIR defendants' motion to dismiss on September 14, 2000.

The trial court denied the WNIR defendants' motion to dismiss because the Gilberts had produced tape recordings and it was unclear as to whether the Gilberts ever had possessed additional recordings. Further, the trial court withheld its final determination on this matter due to this lack of evidence, stating:

"Whether or not inconsistencies exist that cause the Defendants to believe that additional tapes exist is something that the Defendants can address during cross-examination at trial, if necessary. Further, should the Plaintiffs seek to introduce at trial tapes that have not been previously produced to the Defendants, at that time the Defendants may present the appropriate objections to the Court."

Hence, the trial court has not made a final determination on this issue and clearly finds the evidence below to be so lacking that a final determination is not yet appropriate.

 As the trial court has not passed upon the issue of the existence of the additional tape recordings and whether the Gilberts destroyed them, the controversy raised in this assignment of error is not ripe. "The trial court simply did not reach or rule on" whether the Gilberts had complied with the discovery order or had engaged in the destruction of evidence. *Egan v. Natl. Distillers & Chem.*

*Corp.* (1986), 25 Ohio St.3d 176, 177, 25 OBR 243, 244, 495 N.E.2d 904, 905. We, therefore, find this argument to be unripe. Additionally, as this case must be remanded for further proceedings in which testimony may be adduced on this issue, thereby potentially changing the trial court's initial denial of the WNIR defendants' motion to dismiss, this issue is rendered unripe. We, therefore, decline to pass on this issue as it is not yet ripe for our review, and thus, not properly before this court. See *id.*

2

Second Cross–Assignment of Error

"The trial court erred by failing to grant cross–appellants' motion for summary judgment in toto."

The WNIR defendants assert that the trial court erred in failing to grant their motion for summary judgment as to both Mr. and Mrs. Gilbert. We find that the cause brought by Mrs. Gilbert was dismissed, and therefore, this assignment of error is not properly before this court.

Summary judgment was granted in favor of the WNIR defendants on Mr. Gilbert's claims. Thereafter, Mrs. Gilbert dismissed her claims without prejudice on October 2, 2000, pursuant to Civ.R. 41(A)(1)(a). This appeal followed.

In this assignment of error, the WNIR defendants seek to obtain the reversal of the trial court's denial of summary judgment on a claim that has been voluntarily dismissed pursuant to Civ.R. 41(A)(1)(a). "It is axiomatic that such dismissal deprives the trial court of jurisdiction over the matter dismissed. After its voluntary dismissal, an action is treated as if it had never been commenced. Jurisdiction cannot be reclaimed by the court." (Citation omitted.) *Zimmie v. Zimmie* (1984), 11 Ohio St.3d 94, 95, 11 OBR 396, 397, 464 N.E.2d 142, 144. Moreover, "when a party files a voluntary dismissal pursuant to Civ.R. 41(A)(1)(a), the case ceases to exist. In effect, it is as if the case had never been filed." *Sturm v. Sturm* (1991), 61 Ohio St.3d 298, 302, 574 N.E.2d 522, 525.

As the claims upon which this assignment of error is based were dismissed, we find this assignment of error to be moot and decline to address it.

III

Mr. Gilbert's assignment of error is sustained. The WNIR defendants' first cross-assignment of error is unripe, and accordingly, not properly before this court. Their second assignment of error is moot. The entry of summary

748

judgment by the Summit County Court of Common Pleas is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

*Judgment reversed*
*and cause remanded.*

BAIRD, J., concurs.

CARR, J., concurs in judgment only.