WILBURN et al., Appellees and Cross–Appellants,

v.

CLEVELAND PSYCHIATRIC INSTITUTE, Appellant and Cross–Appellee.

[Cite as *Wilburn v. Cleveland Psychiatric Inst.* (2000), 139 Ohio App.3d 275.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 00AP–485.

Decided Nov. 28, 2000.

*Schulman, Schulman & Meros, John C. Meros* and *Shelia Cooley,* for appellees.

■■■■■■■■■■■■■■■■■■■■

*Betty D. Montgomery,* Attorney General, *Susan M. Sullivan, Eric A. Walker* and *Tracy M. Greuel,* Assistant Attorneys General, for appellant.

---

BROWN, Judge.

Cleveland Psychiatric Institute ("CPI"), defendant-appellant, appeals a March 29, 2000 judgment rendered by the Ohio Court of Claims in favor of Edna Wilburn and Shirley Cochran (guardian *ad litem* for Edna Wilburn), plaintiffs-appellees. Appellees have also filed a cross-appeal with regard to the damages amounts awarded in the March 29, 2000 judgment.

On February 26, 1994, Edna Wilburn discovered that she could not move her right arm, right leg, and was exhibiting slurred speech. She was taken to University Hospital of Cleveland ("University Hospital"), where she arrived at 7:54 a.m. The results of a CAT scan and blood work completed at University Hospital were normal. The University Hospital staff initiated a stroke protocol, but it was not completed because the staff did not believe Edna had suffered a stroke. After interviewing Edna and discovering that she recently had been confronted with several stressful situations, a University Hospital psychiatrist diagnosed Edna as suffering from conversion reaction disorder, a mental illness causing physical impairment without any organic basis. Edna was given medication and told to follow up with outpatient psychiatric treatment. Edna's stroke-like symptoms began improving, and she returned home the same day.

On February 27, 1994, Edna returned to University Hospital, complaining of right-sided weakness, slurred speech, difficulty standing, and loss of bladder control. The hospital staff conducted a physical, which indicated that a positive right-side Babinski reflex was present. In addition, a neurology consultation was completed, which revealed no clinical evidence of a stroke. Edna was again provisionally diagnosed as suffering from conversion reaction disorder, and the staff at University Hospital referred her to CPI to rule out that provisional diagnosis. Dr. Scott Pacer wrote the orders to CPI, indicating that Edna's care should include a neurological consultation and EKG to help determine whether she actually was suffering from conversion reaction disorder. As required, before being admitted to CPI, Edna was medically cleared by St. Vincent's Charity Hospital.

Edna was admitted to CPI on February 28, 1994. Dr. Julio Sales, a staff psychiatrist, began her care. Sales cancelled Pacer's referring orders and never ordered an EKG or a neurological examination, despite the presence of the positive right-side Babinski reflex. Dr. Elena Buendia, a staff physician at CPI, conducted a physical examination of Edna, but she did not test for a Babinski sign, did not review Edna's medical records from the other hospitals, and did not

follow up with another examination or with other tests. CPI diagnosed Edna as suffering from major depression. While at CPI, Edna's condition remained stable and unchanged, although she repeatedly fell and injured herself. She also continued to lose control of her bladder. On March 25, 1994, CPI discharged Edna. At the time of her discharge, Sales still believed that Edna was suffering from conversion reaction disorder and referred her to an outpatient mental health facility.

On April 12, 1994, Edna suffered a severe and disabling stroke. She arrived at MetroHealth Medical Center ("MetroHealth") for treatment. Dr. Donald Kikta, a neurologist, diagnosed Edna with the rare disease, thrombotic thrombocytopenia purpura ("TTP"), a blood disorder that causes strokes. When Edna was admitted to MetroHealth, she also suffered from pneumonia and anemia.

Mary Wilburn, mother and legal guardian of Edna, filed a complaint against CPI alleging that CPI was negligent in its care and treatment of Edna and, as a result of that negligence, Edna suffered a second debilitating stroke. The trial was bifurcated and proceeded on the issue of liability on March 10, 1998 ("*Wilburn I* "). The trial court held that (1) appellees failed to prove that CPI should be held to the same standard of care as a general hospital in the diagnosis and treatment of stroke patients, (2) CPI was not negligent in its care and treatment of Edna because CPI could not be expected to diagnose the rare disease of TTP when the medical hospitals could not, and (3) CPI's diagnosis of conversion reaction disorder was not the proximate cause of Edna's injuries. Edna, through Mary Wilburn, appealed *Wilburn I*.

In *Wilburn v. Cleveland Psychiatric Inst.* (1998), 126 Ohio App.3d 153, 709 N.E.2d 1220 ("*Wilburn II* "), this court found that the Court of Claims had applied the wrong standard of care to CPI. We found that the trial court focused improperly upon the issue of whether CPI's staff fell below the standard of care when they failed to diagnose Edna with TTP, rather than whether CPI failed to meet the standard of care when it did not use the proper tests necessary to rule out conversion reaction disorder. This court stated that the issue in the present case is whether CPI's failure to determine that Edna was not suffering from conversion reaction disorder so she could be referred back to a medical facility for further testing was a falling below the standard of care and a proximate cause of her second stroke. Therefore, we remanded the matter to the trial court to apply the correct legal standard in making its determination.

On September 10, 1998, Mary Wilburn filed a motion requesting that the Court of Claims issue the ruling requested by this court in *Wilburn II*. On October 5, 1998, the Court of Claims denied the motion and assigned the case to a different Court of Claims judge than had previously tried *Wilburn I*. On October 19, 1998,

Mary Wilburn filed a motion for entry of judgment on the issue of negligence, to which CPI never filed a responsive pleading.

On March 4, 1999, the Court of Claims conducted a hearing on the motion for entry of judgment on negligence only. On March 5, 1999, the Court of Claims issued an entry stating that it would issue a decision on the merits of the motion for entry of judgment on negligence only based upon a review of the trial transcript and any other evidence admitted at the previous trial and applying the legal standard set forth in *Wilburn II*.

On March 9, 1999, the Court of Claims issued an entry finding that CPI was negligent. The entry did not indicate the reasoning or analysis for its finding. A trial was conducted on October 4 and 5, 1999, regarding the issues of proximate cause and damages (*"Wilburn III"*). On February 24, 2000, Shirley Cochran was appointed guardian *ad litem* for Edna, as Edna's previous guardian *ad litem*, Mary Wilburn, had died. On March 29, 2000, the Court of Claims issued its decision and judgment awarding Edna fifty percent of her lost wages and employment benefits, totaling $242,520.50. The Court of Claims also awarded Edna the cost of her future care minus twenty-five percent, totaling $1,337,806.50, and noneconomic damages, totaling $250,000. Thus, Edna's total award was $1,830,327. CPI appeals this judgment of the Court of Claims. Appellees have also filed a cross-appeal. CPI asserts the following four assignments of error:

"ASSIGNMENT OF ERROR NO. 1:

"The Court of Claims erred in holding Cleveland Psychiatric Institute to a different standard of care than mandated by this court.

"ASSIGNMENT OF ERROR NO. 2:

"The Court of Claims erred in cancelling the liability trial scheduled by another Court of Claims judge, and finding negligence without ever seeing or hearing any witnesses.

"ASSIGNMENT OF ERROR NO. 3:

"The Court of Claims erred by allowing plaintiff's expert to change his opinion without any notice, thereby ambushing the Ohio Department of Mental Health with a new opinion.

"ASSIGNMENT OF ERROR NO. 4:

"The Court of Claims erred in awarding $242,520.50 for lost wages although no evidence of Edna Wilburn's salary history was ever admitted."

▇▇▇ CPI argues in its first assignment of error that the Court of Claims erred in holding it to a different standard of care than that mandated by this court in *Wilburn II*. The Ohio Supreme Court held in *Bruni v. Tatsumi* (1976),

46 Ohio St.2d 127, 346 N.E.2d 673, that in order to establish medical malpractice, the plaintiff must show (1) the standard of care recognized by the medical community, (2) the failure of the defendant to meet the requisite standard of care, and (3) a direct causal connection between the medically negligent act and the injury sustained. The appropriate standard of care must be proven by expert testimony. *Id.* That expert testimony must explain what a physician of ordinary skill, care, and diligence in the same medical specialty would do in similar circumstances. *Id.*

In *Wilburn II*, we found that the Court of Claims had applied the wrong standard of care to CPI, stating:

"The trial court focused on the issue of whether CPI's staff fell below the standard of care when they failed to diagnose Edna with TTP. The trial court did not address the issue of whether Sales failed to meet the standard of care when he did not rule out conversion disorder. *The problem in this case does not arise from CPI's failure to diagnose Edna's rare disease, the problem stems from CPI's failure to determine that Edna was not suffering from conversion disorder so that she could be referred back to a medical facility for further workup.*

"* * *

" * * *Although not required to diagnose TTP, CPI was required to use what medical tests were necessary to rule out conversion disorder. We hold that the trial court incorrectly applied the legal standard when determining the appropriate standard of care." (Emphasis added.) 126 Ohio App.3d at 157–158, 709 N.E.2d at 1223.

In its March 9, 1999 entry, the Court of Claims found CPI negligent. However, the trial court did not state its reasons for this finding or state what standard of care it used in arriving at this determination. After the proximate cause and damages trial, the Court of Claims issued its March 29, 2000 decision. In its decision, the Court of Claims initially stated the proper standard of care consistent with our decision in *Wilburn II:*

"Thus, the specific issues for the court to determine herein are whether defendant's negligent failure to timely rule out conversion disorder caused plaintiff to suffer a second stroke on April 12, 1994, and, if so, whether that second stroke caused further damage to plaintiff."

However, after discussing the evidence presented, in making its ultimate disposition on the issue of proximate cause, the Court of Claims went on to state:

"Based on the totality of the evidence presented in this case, the court finds that *defendant's failure to properly diagnose and treat plaintiff's TTP* after her first stroke proximately caused plaintiff to suffer her second stroke on April 12, 1994." (Emphasis added.)

This finding is in direct contravention of what this court held the proper standard of care should be in this case. In *Wilburn II,* we stated that CPI was not required to diagnose and treat Edna's TTP. Because of the two conflicting statements by the Court of Claims, it is unclear whether in finding proximate cause the court used the correct standard of care.

Because the Court of Claims did not explain its reasoning for its finding of negligence in its March 9, 1999 entry, we also cannot be certain that the trial court used the correct standard in finding negligence. The trial court's conclusion as to proximate cause in its March 29, 2000 decision, as quoted above, encompasses the duty and breach elements as well as the proximate cause element. Thus, the only evidence in the record as to what standard of care the trial court held CPI in initially determining the duty and breach elements of negligence is its statement that CPI "fail[ed] to properly diagnose and treat plaintiff's TTP after her first stroke." Therefore, we are uncertain whether the Court of Claims applied the correct standard of care in determining the elements of breach and duty, as well as proximate cause, as explained previously.

Appellees urge that "CPI is now splitting hairs to say that Judge Bettis's choice of words are fatal to his decision." Although the Court of Claims' conclusory sentence may have been a misstatement that would constitute harmless error, especially considering that it had previously stated the correct standard of care, other portions of the trial court's decision add further uncertainty as to whether the Court of Claims improperly focused upon CPI's failure to diagnose and treat Edna's TTP. For instance, the Court of Claims made the following findings:

"Plaintiff argues that if defendant had begun to search for a medical cause for plaintiff's symptoms in a timely manner, defendant would have discovered that plaintiff was suffering from TTP * * *.

"According to plaintiff's experts, these findings, combined with the fact that plaintiff had none of the major risk factors for stroke prior to February 26, 1994, should have alerted defendant's medical staff to the possibility of TTP * * *.

"According to O'Brien, the blood work would have revealed the existence of TTP."

These findings demonstrate that the Court of Claims may have again been improperly concerned with CPI diagnosing and treating TTP, rather than ruling out conversion reaction disorder.

Appellees also claim that there is no distinction between ruling out conversion reaction disorder and diagnosing TTP because "[t]he same tests used to rule out conversion disorder (CT scan, neurological exam) are the same tests that would have eventually led to the detection of TTP." However, appellees' psychiatric

expert, Dr. Haley, testified that conversion reaction disorder could have been ruled out because Edna's symptoms were not consistent with the criteria used to diagnose conversion reaction disorder, but were consistent with organic disease. Edna's symptoms that were inconsistent with conversion reaction disorder included urinary incontinence, repeated episodes of falling, cognitive difficulties in concentration, confusion in thinking and memory, physical pain, and swelling of the limbs. Dr. Haley also testified that Edna did not exhibit any of the indications for major depression, which include a two-week period of being in a consistently depressed mood; loss of interest in pleasure; changes in appetite, weight, sleep, and energy; feelings of hopelessness, guilt, and low self-worth; and possibly suicidal thinking. Thus, if the testimony of Dr. Haley were to be found credible, it is possible that conversion reaction disorder could have been ruled out without actually making a finding that Edna was suffering specifically from TTP.

Therefore, because we cannot be certain that the Court of Claims used the correct standard of care for CPI as directed in *Wilburn II,* we are compelled to remand this case to the Court of Claims to determine whether CPI was negligent in failing to rule out conversion reaction disorder, and, if so, whether such negligence was the proximate cause of Edna's damages. CPI's first assignment of error is sustained. Because we have sustained CPI's first assignment of error, CPI's second, third, and fourth assignments of error, and appellees' first and second cross-assignments of error are rendered moot, and we need not address them. See App.R. 12(A)(1)(c).

Accordingly, because the trial court may have used the improper standard of care for determining whether CPI was negligent and whether such negligence was the proximate cause of Edna's damages, CPI's first assignment of error is sustained. CPI's second, third, and fourth assignments of error are moot. Appellees' first and second cross-assignments of error are also moot. We remand this matter to the Court of Claims to reconsider the issues of negligence, proximate cause, and damages based upon the standard of care as set forth in *Wilburn II.* Whether a new trial is necessary upon remand or whether a redetermination of the issues may be adequately made utilizing the transcripts from the previous hearings is within the discretion of the trial court. See Civ.R. 63(B); *Adkins v. Adkins* (1988), 43 Ohio App.3d 95, 539 N.E.2d 686, paragraph four of the syllabus; *Johnson v. Johnson* (June 12, 1998), Montgomery App. No. 97–CA–78, unreported, 1998 WL 309230.

*Judgment reversed*
*and cause remanded with instructions.*

TYACK and GEORGE, JJ., concur.

JOYCE J. GEORGE, J., retired, of the Ninth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.