OPINION
Plaintiff-appellant, Ivy Featherstone, appeals from the judgment of the Ohio Court of Claims in favor of defendant-appellee, The Ohio State University College of Dentistry, following a trial to the court on his complaint asserting claims for relief sounding in libel, slander and defamation.
On October 5, 1998, appellant, a retired teacher, sought evaluation and treatment for a dental problem at The Ohio State University College of Dentistry clinic. Levi Evalt, a third-year pre-doctoral dental student at the time, was assigned to assist in appellant's treatment under the supervision of Dr. Deborah Mendell, D.D.S., Clinic Director. In accordance with standard clinic procedure, Evalt interviewed appellant concerning his medical history and obtained a blood pressure reading. The patient disclosed that he had been treated for high blood pressure. His measured blood pressure was high that day. Because of the test results, Evalt wrote a consultation request to Dr. Wodarcyk, a medical doctor in urology who treated appellant following a 1996 hospitalization for a prostate condition. The request identified a need to evaluate appellant's high blood pressure prior to commencement of the proposed dental treatment outlined in the body of the request. Progress notes in appellant's patient file, dated October 5, 1998, documented the blood pressure test results and noted that the patient "takes Viagra as needed" and "mentioned the use of cocaine recently." Evalt also recorded that the patient had been advised that his blood pressure was too high for him to receive dental treatment and was referred to his physician. Both Evalt and Dr. Mendell signed the progress notes of that date. Cocaine use was not mentioned in the written consultation request.
On October 16, 1998, appellant returned to the College of Dentistry clinic and again saw Evalt. Although Dr. Wodarcyk's office had telephoned a blood pressure reading within normal parameters to the dental clinic two days earlier, the clinic had not received a written response to its consultation request. Preparing for appellant's appointment, Evalt called Dr. Wodarcyk's office to request that the consultation response be faxed to the clinic. A clerical employee of Dr. Wodarcyk promised that the response would be faxed by 1:00 p.m. that day. None was received by 1:20 p.m., and more blood pressure tests were performed. The results were all unacceptably high for the dental treatment to begin and the patient was again sent home. The progress notes of October 16, 1998, include the following information:
 * * * Pt. left after I told him that we shouldn't treat him today because of his blood pressure. I warned him about the complications of treating him while his BP is high, including stroke and heart attack. At 2:00 p.m. I called his urologist and told them his BP. I discussed with them his confession of cocaine abuse ("use") to me. Before leaving, I urged Mr. Featherstone to seek a primary care physician to help control his BP. * * *
Both Evalt and Dr. Mendell signed the quoted progress notes.
A third appointment was scheduled for November 16, 1998. Appellant's blood pressure was high again. Another consultation request, addressed to Dr. Raleigh Callion, who saw appellant in connection with his hypertension, was prepared and sent. Cocaine use was not mentioned in the request directed to Dr. Callion. Appellant again left the clinic without being treated. On December 18, 1998, the dental clinic received a faxed copy of Dr. Callion's consultation response in which appellant was reported to have uncontrolled hypertension. The consulting physician's recommendation was that the clinic should have him sign a waiver prior to surgical treatment.
On January 8, 1999, Dr. H. Langley Page, Associate Dean for Clinical Affairs for The Ohio State University College of Dentistry sent appellant a letter advising that, "[t]he College of Dentistry can no longer provide you with elective dental treatment due to your uncontrolled hypertension (high blood pressure)." Appellant's case file was officially closed on January 22, 1999. A month or two later, he requested copies of his x-rays in connection with consulting a private dentist, and the entire content of the file was released to him, including the progress notes mentioned above. Appellant represents that, upon receiving and reviewing those records, he first became aware that reference to cocaine use had been included in the progress notes and that such information had been disclosed to personnel in Dr. Wodarcyk's office.
Soon thereafter, appellant filed his complaint alleging: (1) he has never in his life used cocaine; (2) the notation in the progress notes of his mentioning recent cocaine use was maliciously false; (3) his reputation was seriously damaged by Evalt's communication to an employee of Dr. Wodarcyk concerning his "confession of cocaine abuse"; (4) the communication was an intentionally and maliciously made publication of false information to others; and (5) he is entitled to recover damages as the result of the communication. Appellee answered the complaint, generally denying the allegations and asserting as affirmative defenses, among others, the doctrines of absolute and qualified privilege. The trial court denied a pre-trial motion by appellee for summary judgment and trial was scheduled and concluded on November 30, 2000. After the parties submitted post-trial briefs, the court rendered its judgment in favor of appellee on May 29, 2001, in accordance with a written decision filed the same day.
Appellant timely filed his notice of appeal from the adverse judgment. In his brief, appellant presents nineteen assignments of error for our consideration, which are as follows:
 Error 1: From Plaintiff's observation and spectators who were in the audience, it was observed that during the trail [sic] Judge Bettis appeared to be asleep.
 Error 2: Defendant and his supervisor were both present during each testimony. Plaintiff requested that they be separated during each other's testimony. Judge Bettis said there were no provisions for that.
 Error 3: Judge Bettis stated on line 10 first page that Examination revealed that several procedures were required to correct the problem. . .
 That statement is false. No examination ever took place because of Plaintiff's blood pressure.
 Error 4: Judge Bettis refers to Levi Evalt as Dr. Evalt. Levi Evalt was not a doctor or dentist at any time. Levi Evalt was a student.
 Error 5: Judge Bettis states on page 1, line 19. . .There is some dispute as to what next transpired. . .
 When there is a dispute, the charging party has the burden to prove his statement. At no time did Levi Evalt prove his statements through witnesses, documents, history that Plaintiff made any cocaine statement to him (Levi Evalt). Indeed Levi Evalt did not present a single witness.
 Error 6: Judge Bettis wrote. . .Plaintiff adamantly denies ever telling Dr. Evalt (Levi) that he had used drugs.
 The Ohio Supreme Court ruled on a motion for Summary Judgment. See Wing v. Anchor Media, LTD, of Texas (1991), 59 Ohio St.3d 108, paragraph 3 of the syllabus, adopting Celotex v. Catrett, 477 U.S. 317 (1986). In Celotex, the United States Supreme Court stated:
 [A] Party seeking Summary Judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answer to interrogatories, and admissions on files together with affidavits, if any which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.
 Defendant did not get a Summary Judgment because Defendant had absolutely no proof that Plaintiff ever made any cocaine statement to Defendant. When a person accuses someone of a negative behavior, that person has the burden of proof.
 Error 7: Judge Bettis wrote the statement that. . .Dr. Evalt (Levi) drafted the request and, according to his testimony at trial, reviewed it with Plaintiff before Plaintiff left clinic on October 5, 1998
 That drafted request was in handwritten form. Plaintiff was long gone from the clinic when the typed form was typed by the clerk at the end of the day. Plaintiff could not have reviewed it because Plaintiff was not there. Also, note the Reason for Consultation: Treatment of Hypertension prior to dental treatment.
 Error 8: Judge Bettis wrote page 2, line 13. . .Dr. Evalt (Levi) also testified that, at Plaintiff's request, the letter contained no mention of cocaine use. There is no mention of cocaine use in the handwritten consultation.
 Now if Plaintiff had requested that Levi Evalt not mention cocaine in the typed consultation to Dr. Wodarcyk's office, Plaintiff would have seen cocaine mentioned in the handwritten consultation. It is not there.
 Error 9: Judge Bettis wrote page 2, line18. . .On October 14, 1998, Dr. Wodarcyk's office called in a blood pressure reading 156/90 for Plaintiff. In the reason for consultation, the request was for treatment of hypertension. That is the information Dr. Wodarcyk's office sent.
 Levi Evalt is and was not a medical doctor. Dentists don't treat dental patients for medical illness, nor do they diagnose or give medical advice. They are not medical doctors (MD's).
 Error 10: Judge Bettis wrote page 3, line 3. . .According to Dr. Evalt (Levi) clinical notes for that date, he talked to someone about Plaintiff's uncontrolled hypertension and "discussed with them Plaintiff's confession of cocaine abuse (use)."
 Defendant admitted at trial that he has never spoken to Dr. Wodarcyk, never seen Dr. Wodarcyk, nor would he recognize Dr. Wodarcyk if Dr. Wodarcyk walked into the room.
 Levi Evalt discussed his patient's medical history or condition to a stranger on the other end of a telephone whom Levi Evalt knew was not a doctor. [Patient confidentiality, thrown out the window to a stranger.]
 Error 11: Judge Bettis wrote page 3, line 22. . .However, a consultation request was sent to Dr. Raliegh Collion [sic]. . .
 Dr. Collion [sic] was actually treating Plaintiff for hypertension. Levi Evalt spoke to Dr. Collion [sic] several times, however, he never mentioned cocaine to Dr. Collion [sic].
 Error 12: Judge Bettis wrote page 4, line 13. . .Here, Plaintiff contends that Dr. Evalt (Levi) slandered him and defamed his character by charting and communicating the information concerning cocaine use to Dr. Wodarcyk's office. The allegation is also based on the contention that the information is patently false, and should not have been communicated to anyone, much less a physician office that had no reason to know of such matters in connection with treatment he was providing Plaintiff.
 First, Levi Evalt never spoke to a physician; he spoke to a female on the other end of the telephone line. The doctor was not in according to Levi Evalt. The allegation was absolutely false. Since Levi Evalt made these false allegations, Levi Evalt had the _burden of proof to present evidence other than his word. Also, Levi Evalt knew the doctor was not treating the Plaintiff for anything. He also knew that Dr. Wodarcyk was a urologist. He also knew that Dr. Wodarcyk had no need to know. Dr. Wodarcyk is a medical doctor. Levi Evalt was a student trying to become a dentist. In page 6, it clearly states when there is a need to know.
 Error 13: Judge Bettis wrote page 4, line 26. . .Although Plaintiff insisted that he never abused drugs and would have never made such a statement to Dr. Evalt (Levi), the greater weight of the statement was made.
 What does Judge Bettis base that statement by Levi Evalt on? There is no evidence, no record, police, no history, or otherwise. Plaintiff was a teacher for 32 years. The _burden of proof for that allegation clearly belongs to the Defendant.
 Error 14: Judge Bettis states page 5, line 5. . .According to Dr. Evalt (Levi) it was at that point that Plaintiff stated something like "sometimes" or "just on weekends."
 Plaintiff said something like; what does that mean? Levi Evalt talking; "I discussed with them his confession of cocaine abuse ("use") to me." Where did Levi Evalt get this information from?
 Error 15: Judge Bettis wrote page 5, line 20. . .Moreover even if the court were to find that Plaintiff [The Judge Bettis probably meant Defendant when he used the Plaintiff], published a defamatory communication when he made his clinical notation or when he communicated the information to Dr. Wodarcyk, Defendant is shielded from liability because of qualified privilege.
 First, Levi Evalt did not communicate this information to Dr. Wodarcyk, but instead to an unknown female on the other end of the phone whom he knew was not a doctor. There clearly was not qualified privilege since Levi Evalt was not a doctor, nor was he a patient. The person on the other end of the phone was not a doctor, nor a patient. Therefore, Levi Evalt's communication could not have been used in the context of a doctor/patient relationship. Jacobs v. Frank (1991), 60 Ohio St.3d 111.
 Also a knowingly false statement cannot be in good faith. Also, Levi Evalt had no duty to provide treatment for the Plaintiff if Levi Evalt felt that the Plaintiff did not qualify because of medical reasons.
 Error 16: Judge Bettis wrote page 6, line 15. . .Although the evidence is unclear as to when Dr. Evalt (Levi) learned that Dr. Wodarcyk was a urologist, there is no evidence that Plaintiff at any time told Dr. Evalt (Levi) what type of treatment Dr. Wodarcyk was providing, that he objected to Dr. Wodarcyk been sent a consultation request letter, or that he provided any other physician's name to Dr. Evalt (Levi).
 First, it is clear when Levi Evalt learned that Dr. Wodarcyk was a urologist, also. Levi Evalt was told that Dr. Wodarcyk was providing Plaintiff with Viagra, and that Dr. Wodarcyk had performed a prostate procedure in 1996 and was providing Viagra. Also note where Levi Evalt date 10/16/98, line 6. . .At 2:00 pm I called his urologist and told him his B.P. Levi Evalt clearly knew that Dr. Wodarcyk had performed a prostate procedure in 1996 and was providing Viagra. Thirdly, in Levi Evalt's own words, he states on page 5, line 7. Also at that point, Plaintiff asked that no information about cocaine be included in the consultation request letter to Dr. Wodarcyk. Dr. Evalt (Levi) stated that he omitted the information out of respect for Plaintiff, because Plaintiff appeared to feel that it was a private matter. Fourthly, Levi Evalt was provided the name of Dr. Raliegh Collion [sic], a doctor who was actually treating Plaintiff for hypertension. Yet, Levi Evalt never made a statement about cocaine to this doctor.
 Error 17: Judge Bettis stated page 6, line 8. . .Whether Plaintiff abused drugs, the court has found that he made the statement.
 What evidence did Judge Bettis use to find that Plaintiff made that statement? This is an abuse of power. Judge Bettis has no right to make that statement without evidence.
 Error 18: Judge Bettis states page 7, line 5. . ."Reckless disregard" is shown by presenting "sufficient evidence to permit a finding that the Defendant had serious doubt as to the truth of his publication." Id.
 Levi Evalt not only had serious doubts, he knew the statements he made about Plaintiff's confession that Plaintiff ever used cocaine was an absolute lie. Levi Evalt never presented a single witness, a recording, a police report, or any reason for Plaintiff, who was seeing Defendant, Levi Evalt for the very first time in Plaintiff's life, would for no reason confess to a stranger that Plaintiff abused cocaine. Dr. Wodarcyk is a urologist, and takes a urine test each time he sees a patient. In 1996 when Dr. Wodarcyk did the prostate procedure he made sure that Plaintiff had every kind of test available. At no time was there a question of drugs of any kind. Levi Evalt is a liar. Levi Evalt's motive might have been racism. After the name Dr. Wodarcyk, across under the telephone number 257-2500, Levi wrote the word in small print (Polish). Dr. Wodarcyk is Polish. When Plaintiff asked Levi Evalt why he wrote that word, Levi Evalt said he did not know. Judge Bettis objected to Plaintiff using the word racism in his court. So, Plaintiff was not able to pursue that question.
 Error 19: Judge Bettis wrote page 7, line 17. . .Accordingly, the court finds that Defendant is shielded from liability by virture of a qualified privilege. The Ohio Supreme Court in Jacobs v. Frank (1991), 60 Ohio St.3d 111, paragraph specifically held that:
 [W]hen a Defendant possesses a qualified privilege regarding statements contained in a published communication, that privilege can be defeated by a clear and convincing showing that the communication was with actual malice.
 Plaintiff can only tell the truth. When Plaintiff rested his case, the defense made a motion for a direct verdict. Judge Bettis emphatically said, "Motion denied, put on your defense."
 Defense stated that they had no witness, no rebuttal, nothing. That is how the case ended. Please note Plaintiff's closing brief.
Appellee correctly argues in its own brief that appellant's pro se filings do not comply with either App.R. 16 or Loc.R. 7, each of which set forth formal requirements for appellate court briefs. The Rules of Appellate Procedure are binding upon all parties, including pro se litigants. Meyers v. First Natl. Bank (1981), 3 Ohio App.3d 209, 210.
Nonetheless, in order to decide cases on their merits, further the interests of justice, and give self-represented parties their day in court, we choose to afford this pro se litigant procedural latitude. See Miller v. Kutschbach (1996), 111 Ohio App.3d 157, 159. Accordingly, we shall "review the trial court's * * * judgment for the errors raised in the body of the appellant's `brief'" or contained in the exhibits filed with the brief, Conley v. Willis (June 14, 2001), Scioto App. No. 00CA2746, unreported; and, thereby, endeavor "to ascertain whether there is any merit to appellant's arguments." See Besser v. Griffey (1993),88 Ohio App.3d 379, 382; and Whittington v. Kudlapur (July 25, 2001), Hocking App. No. 01CA1, unreported. We will not, however, attempt to construct for appellant, from arguments lacking clarity, assignments of error that may be proper for us to consider. Conley, supra, at 4, quoting State ex rel. Karmasu v. Tate (1992), 83 Ohio App.3d 199, 206.
The record on appeal does not include a transcript of the trial. App.R. 9(B) requires, in part:
 * * * If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the weight of the evidence, the appellant shall include in the record a transcript of all evidence relevant to the findings or conclusion.
Most of the assignments of error dispute factual findings and, thus, require specific reference to a transcript to support the error.
The first two assignments of error complain of irregularities during the trial in relation to the court's attentiveness and its alleged[1]
failure to enforce a request for separation of witnesses. Without a transcript, we cannot even determine if a request for separation or an objection to other alleged irregularities was made. When portions of the transcript necessary for the resolution of assigned errors are not included by an appellant in the record on appeal, a reviewing court has nothing to pass upon and, as to those assigned errors, no choice but to presume the validity of the lower court's proceedings. Miller v. Fr. Cty. Children Serv. (May 2, 2001), Franklin App. No. 00AP-1375, unreported; quoting Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197, 199. In accordance with that required presumption of regularity, appellant's first and second assignments of error are overruled.
In his third through twelfth assignments of error, inclusive, appellant challenges the trial court's recitation of factual background, including its choice of words to describe the evidence, its summary of testimony, and its recapitulation of appellant's allegations. To the extent that appellant contends by these assignments of error that the trial court's findings are against the weight of the evidence, we are bound, absent a transcript, to presume the validity of the proceedings below and to overrule them. Knapp, supra, at 199. Even if we were not so bound, we do not generally determine issues involving credibility, and we do not simply substitute our judgment for that of the trial court. Oleski v. Hilliard City School Dist. Bd. of Edn. (Sept. 25, 2001), Franklin App. No. 01AP-294, unreported. Issues of witness credibility and concerning the weight to attach to specific testimony remain primarily within the province of the trier of fact, whose opportunity to make those assessments is superior to that of a reviewing court. State v. Bezak (Feb. 18, 1998), Summit App. No. C.A. 18533, unreported; citing State v. DeHass (1967), 10 Ohio St.2d 230, 231. Every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the trial court's findings of facts. Stamper v. Univ. of Cincinnati Hosp. (Aug. 31, 2000), Franklin App. No. 99AP-1157, unreported, quoting Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
We will nonetheless consider the trial court's language within the entire context of its decision to determine if any of the language complained of represents a finding essential, or significantly related, to the court's conclusions. We will do so in order to assess what prejudice, if any, appellant may have suffered in relation to those findings. Swope v. Cooper (Nov. 7, 2000), Franklin App. No. 00AP-154, unreported. We must also decide whether or not the language chosen by the trial court suggests or manifests an incorrect application of the law. As an example, in Wilburn v. Cleveland Psychiatric Inst. (2000),139 Ohio App.3d 275, 280, conflicting statements in the body of the trial court's decision rendered unclear whether or not the court applied the correct standard of care in finding the defendant in that case negligent.
None of the passages from the decision by the Ohio Court of Claims complained of in appellant's third through twelfth assignments of error, inclusive, constitutes a finding that is necessary to the court's judgment. Within the context of the entire decision, each identifies or discusses items of evidence before the court, but does not represent a determination of credibility or weight. Furthermore, none of these passages suggests or manifests an incorrect application of the law. Appellant's arguments regarding burden of proof in his fifth, sixth and twelfth assignments of error mistakenly presume a burden shifting that the law does not recognize. See Jacobs v. Frank (1991), 60 Ohio St.3d 111,115-116. The contention in his sixth assignment of error, that we should attach some evidentiary significance to the denial of a motion for summary judgment, likewise lacks merit. Even if we were to consider any of those portions of the decision to be a misstatement, we would, and do, have difficulty finding any of them prejudicial. Hence, any arguable error, although we find none, is harmless. Swope, supra, at 31. Accordingly, appellant's third through twelfth assignments of error, inclusive, are overruled.
In his thirteenth and fourteenth assignments of error, appellant challenges findings by the trial court upon which it based its conclusions that: (1) he failed to meet his burden of proving that Evalt published a false or defamatory statement by documenting the discussion of appellant's past cocaine use in his clinical notes and then communicating that information to Dr. Wodarcyk's office; and (2) he failed to show "any degree of culpability on the part of Dr. Evalt."[2]
Libel and slander are types of defamation. See Miller v. Ameritech (June 5, 2001), Franklin App. No. 00AP-909, unreported. "`A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" Id. at 6, quoting Restatement of the Law 2d, Torts (1977) 156, Section 559. A defamation claim, whether alleged as libel or slander, is composed of five elements: (1) a false statement; (2) about the plaintiff; (3) published without privilege to a third party; (4) with fault of at least negligence on the part of defendant; and (5) that was either defamatory per se or caused special harm to plaintiff. Gilbert v. WNIR 100 FM (2001), 142 Ohio App.3d 725,735. Clear and convincing evidence is required as to the element of fault, while a private plaintiff must prove all other elements by a preponderance of the evidence. Id. at 734.
Appellant's arguments in support of these assignments of error focus on his own interpretation of the evidence presented. The factual findings he disputes are the foundation of the trial court's decision that appellant failed to prove the elements of defamation, but our ability to review them is limited in absence of a transcript. We presume the validity of the findings and will not disturb the trial court's conclusions in relation to appellant's failure to prove falsity or culpability. Knapp, supra, at 199. Therefore, appellant's thirteenth and fourteenth assignments of error are overruled.
By assignments of error fifteen through nineteen, inclusive, appellant objects to the trial court's findings and applications of case law relating to doctor-patient confidentiality and the doctrine of qualified privilege. The trial court found that, even if it had determined that a defamatory communication was published when Evalt made his clinical notations and then shared information about his discussion with the patient concerning past occasional cocaine use, appellee is shielded from liability because of a qualified privilege. The court held that, "[i]n this case, the existence of a qualified privilege could not be more clear."
The importance of confidentiality in doctor-patient and dentist-patient relationships is well recognized in Ohio. See, e.g., R.C. 2317.02(B) et. seq.; Biddle v. Warren Gen. Hosp. (1999), 86 Ohio St.3d 395, 401; Ohio State Dental Bd. v. Rubin (1995), 104 Ohio App.3d 773, 774; and Allinder v. Mt. Carmel Health (Feb. 17, 1994), Franklin App. No. 93AP-156, unreported, citing Littleton v. Good Samaritan Hospital 
Health Ctr. (1988), 39 Ohio St.3d 86, fn. 19. Nonetheless, where a patient alleges that information divulged in confidence to a medical professional has been published by that professional to a third person, without the patient's consent or in a defamatory way, the doctrine of qualified privilege may be properly asserted as an affirmative defense. A B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. Constr. Trades Council (1995), 73 Ohio St.3d 1, 7; citing Hahn v. Kotten (1975),43 Ohio St.2d 237, 243.
In Biddle, supra, at 402, the Ohio Supreme Court held:
 * * * [I]n the absence of prior authorization, a physician or hospital is privileged to disclose otherwise confidential medical information in those special situations where disclosure is made in accordance with a statutory mandate or common-law duty, or where disclosure is necessary to protect or further a countervailing interest which outweighs the patient's interest in confidentiality.
The privilege applies no less to the dentist-patient relationship. A communication made in good faith on a subject in which the person communicating has an interest, or in reference to which he or she has a duty, is privileged if made to a person having a corresponding interest or duty. This conditional or qualified privilege attaches even though the communication contains matter that, without this privilege, would be actionable and, although the duty is not a legal one, but only a moral or social duty of imperfect obligation. A B-Abell, supra, at 8, quoting Hahn, supra, at 719. The elements of a conditionally privileged communication are "good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only." Id. Qualified privilege "does not attach to the communication, but to the occasion on which it is made." Id.
Appellant argues that Evalt was merely a dental student and not a dentist at the time of the communication to an employee of Dr. Wodarcyk. Because neither Evalt nor Dr. Wodarcyk's employee was a physician, appellant reasons that the communication falls outside the doctor-patient relationship and, therefore, the doctrine of qualified privilege does not apply. To follow appellant's argument in this regard to its logical conclusion, however, would require us to decide that the information divulged to Evalt during the initial intake appointment of October 5, 1998, did not create an obligation on the part of either Evalt or Dr. Wodarcyk's employee to preserve the confidentiality. In Knecht v. Vandalia Medical Center, Inc. (1984), 14 Ohio App.3d 129, 131-132, for example, disclosure in a limited fashion by a secretary-receptionist to her son of confidential information relating to a patient's past treatment was found not to be actionable as against either the employee or the medical clinic by which she was employed.
There is no question that Evalt was not a licensed dentist at the time he had contact with appellant. Similarly, there is no question that appellant presented himself at The Ohio State University College of Dentistry clinic for the purpose of being evaluated and treated for a dental problem, or that Evalt provided dental services to appellant under the supervision and within the scope of his assignment at the dental clinic. Nothing in the record suggests that Dr. Wodarcyk's receptionist or secretary acted outside the scope of her employment when she talked to Evalt on October 16, 1998. Where the agent or employee of a physician or dentist, acting within the scope the agency or employment, obtains confidential information concerning a patient for the purpose of assessing that patient's medical condition, the information is confidential. State v. Kabeller (Dec. 20, 1990), Franklin App. No. 90AP-53, unreported, construing R.C. 2317(B)(3). See, also, Lowe v. Fiorini (Aug. 21, 1997), Perry App. No. CA-96-38, unreported. Such information should not be shared unless the qualified privilege doctrine applies and the publication of the information is in furtherance of a recognized common interest between the publisher of the information and the recipient.
Appellant suggests that, since Dr. Wodarcyk's specialty is urology, Evalt and Dr. Wodarcyk, by implication, did not share a commonality in interest so as to justify applying the qualified privilege defense. We note that Dr. Wodarcyk telephoned the dental clinic with appellant's blood pressure reading on October 14, 1998. That act is evidence of the common interest held by Dr. Wodarcyk and the dental clinic. The sharing of confidential information with another health care professional for use in a patient's treatment and, thus, in furtherance of a common interest in the patient's health and well-being is a communication cloaked by qualified privilege. The trial court ruled:
 * * * [A]s a medical provider, Dr. Evalt had a duty to communicate the information and to seek additional medical advice before providing dental treatment that could be injurious, if not deadly, to plaintiff. The communication was completely professional, limited in its scope and purpose, and made in a proper manner to proper parties. * * *
The trial court found no evidence that appellant objected to a consultation request being sent by Evalt to Dr. Wodarcyk.
On the limited record before this court, measured against the elements of a conditionally privileged communication set forth in A B-Abell, supra, at 8, we find no reason to disturb the trial court's determination that Evalt, acting within the scope of his assignment for appellee, communicated to Dr. Wodarcyk's office information concerning appellant's mention of occasional past cocaine use in good faith and in furtherance of a common interest in appellant's health. Nor do we find reason to disturb the trial court's determination that the communication was limited in its scope to this purpose and published in a proper manner to proper parties only.
Where the affirmative defense of qualified privilege is raised and found to be applicable, the plaintiff in a defamation action may still overcome the privilege by showing that the defamatory statement was published with malice. In a private figure defamation action, as here, if the communication "be privileged, the plaintiff may not recover, although he proves that defendant used language actionable per se and that the same was false, unless he goes further and shows that in using same, defendant was moved by actual malice, such as ill will, spite, grudge or some ulterior motive." Jacobs, supra, at 115, quoting Hahn, supra, at 248, quoting DeAngelo v. W. T. Grant Company (1952), 64 Ohio Law Abs. 366, 370. The common law "actual malice" required in a private figure defamation case not only connotes hatred, ill will or a spirit of revenge, but also equates with publishing a defamatory statement knowing it to be false or doing so with reckless disregard as to truth or falsity. Long v. Bowling Green State Univ. (June 30, 1997), Franklin App. No. 96API12-1736, unreported; citing Jacobs, supra, at 115-116. At a minimum, "`the plaintiff must prove by clear and convincing evidence that the defendant failed to act reasonably in attempting to discover the truth or falsity or defamatory character of the publication.'" Gilbert, supra, at 742, quoting Lansdowne v. Beacon Journal Publishing Company (1987), 32 Ohio St.3d 176, 180. We agree with the trial court that appellant failed to produce adequate indicia of malice.
The trial court granted judgment to appellee after finding that appellant failed to prove by the requisite standard that appellee published a false or defamatory statement. The court further decided that appellee successfully established a qualified privilege affirmative defense. Finally, the court found that appellant failed to prove malice, as was necessary to overcome the qualified privilege. The record supports each of these conclusions. Therefore, appellant's assignments of error fifteen through nineteen, inclusive, are overruled.
Appellant's assignments of error are overruled, and the judgment of the Ohio Court of Claims is affirmed.
Judgment affirmed.
PETREE and LAZARUS, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] Appellee recalls and contends that the witnesses were separated during the course of the trial. See brief of appellee, p. 6.
[2] At the time of the communications complained of by appellant, Levi Evalt was a third-year pre-doctoral dental student who was assigned to render dental care services, under supervision, to patients seeking treatment from The Ohio State University College of Dentistry clinic. By the time of the trial in the case sub judice, Levi Evalt had graduated and entered the dental profession. For that reason, the trial court's referring to him by his then-current professional title, Dr. Evalt, is entirely appropriate.