STURM, APPELLEE, *v.* STURM, APPELLANT.

[Cite as *Sturm v. Sturm* (1991), 61 Ohio St.3d 298.]

(No. 90–1578—Submitted May 15, 1991—Decided July 31, 1991.)

*James B. Davis, Dworken & Bernstein Co., L.P.A., Howard W. Bernstein* and *Patrick J. Perotti,* for appellee.

*Kelley, McCann & Livingstone, James M. Wilsman, Steven A. Goldfarb, Linda M. Mette, Hahn Loeser & Parks, John E. Schoonover* and *Jeffrey D. Van Niel,* for appellant.

WRIGHT, J. This case presents for resolution a single issue of law: whether a waiver signed by the parties in a case is binding when the same case is dismissed and refiled in another county.[1]

Appellee contends, and the courts below agreed, that the phrase "this case only" in the waiver restricts the effectiveness of that waiver to case No. 87–D–179824, the Cuyahoga County case. With the dismissal of that case, appellee asserts, the waiver passed into oblivion.

Appellant argues that the phrase is merely a generic reference to the divorce action and applies with equal force to the divorce case now pending in Ashtabula County because the latter filing is, in all significant respects,

---

1. There are numerous other elements to this case which have occupied the courts below and filled the briefs of both parties, but which are not relevant to the issue presented.

identical to the dismissed case. Appellant also notes the testimony of Cook, in the disqualification hearing, that " * * * I cannot accept them [Wilsman's firm] to handle anything other than this case because I may have to open a lawsuit against the corporation. * * * " This is evidence, appellant argues, that Cook intended the waiver to cover the divorce, not just the now-dismissed case in Cuyahoga County. When the waiver was signed, of course, there was no other divorce case pending. According to the appellant, appellee did, subsequently, file a shareholder's derivative action against James Sturm and the corporation in Ashtabula County on January 3, 1989.

We are convinced by appellant's argument that the waiver was intended to apply to the divorce, regardless of where tried. Appellee's dismissal and refiling of the divorce case cannot serve to circumvent an agreement freely entered into by the parties. Whatever defects might have existed in this waiver have themselves long since been waived by the passage of time. As to the import of the phrase "this case only," we believe the better explanation is that it refers generically to the divorce. At the time of signing, no other divorce action was contemplated. It seems highly improbable that Cook foresaw the dismissal of her suit and its refiling in another county at the time she signed the waiver, which is the construction that appellee would now have this court accept.

Therefore, we hold that where a party expressly waives a conflict of interest by a written judgment entry signed by the party, such waiver remains in effect as a matter of law when the action of which it was a part is dismissed voluntarily and refiled in another county. The judgment of the court of appeals is reversed.

*Judgment reversed.*

MOYER, C.J., SWEENEY, HOLMES and DOUGLAS, JJ., concur.

H. BROWN and RESNICK, JJ., dissent.

HERBERT R. BROWN, J., dissenting. I disagree with the majority's decision to dispose of this case on the issue of waiver. Because of my disagreement, I would reach the important conflict-of-interest issue that this case presents.

This case arises from a disqualification hearing in an action for divorce filed by plaintiff-appellee, Mary Cook Sturm ("Cook"), against defendant-appellant, James Sturm ("Sturm"). A review of the facts is necessary to understand the issues.

In 1968 Sturm and Cook formed a corporation, Sturm & Associates, Inc. ("corporation" or "business"), in which each owned fifty percent of the corporate shares. Cook and Sturm began living together in 1968 and contin-

ued living together until their separation in 1986. The corporation, which still exists, engaged in the purchase and sale of real and personal property. Until December 1986, the proceeds from the business were deposited in an Ameri-Trust Company bank account from which both parties could draw funds. During the period in which they were living together, the parties were primarily supported from the income generated by Sturm & Associates, Inc.

Shortly after the parties separated, Sturm closed the AmeriTrust account and deposited all the corporate funds of Sturm & Associates, Inc. into a National City Bank account in his own name, under the title of "J. Sturm & Assoc., Investments." To accomplish this, Sturm represented to National City Bank that he was sole owner of the business. Sturm did not inform Cook of the change. He continued to put all the income from the corporation into the National City Bank account and now controls all the income from the corporation. Cook, therefore, no longer has access to corporate funds for her living expenses.

James M. Wilsman and Mark Swary, partners with Hahn Loeser & Parks, had represented the corporation in a variety of legal matters over a period of eighteen years. Swary had prepared a will for Mary Cook.

On July 17, 1987, Cook filed for divorce in Cuyahoga County. She named Sturm and the corporation as defendants. Wilsman and Hahn Loeser & Parks represented both Sturm and the corporation in the divorce action. At that time Robert I. Zashin was Cook's attorney. Zashin and Wilsman negotiated a waiver of the conflict-of-interest claim. Cook subsequently replaced Zashin with James B. Davis as her attorney, and dismissed the case in Cuyahoga County pursuant to Civ. R. 41(A)(1)(a). Cook then filed for divorce in Ashtabula County, again naming Sturm and the corporation as defendants. At the same time she filed the motion, at issue in this case, to disqualify Wilsman from representing Sturm and the corporation.

Wilsman and other attorneys from Hahn Loeser & Parks continue to represent the defendant Sturm and the defendant corporation in the present Ashtabula County divorce case. Furthermore, for legal services rendered to Sturm individually, Hahn Loeser & Parks has accepted payment from corporate funds. These payments were made by corporate checks drawn from the National City Bank account, that is, from the assets which are currently in dispute between the parties.

I

Waiver

On July 17, 1987, Cook filed case No. 87–D–179824 in Cuyahoga County seeking divorce from her common-law husband Sturm. In January 1988 Cook

signed a waiver. The relevant language of the waiver states: " * * * Mary Cook Sturm, hereby waives any claim of conflict of interest and/or objection *in regard to this case only* * * *." (Emphasis added.) On December 13, 1988, Cook voluntarily dismissed case No. 87–D–179824 pursuant to Civ. R. 41(A)(1)(a). Sturm argues, and the majority agrees, that the waiver should apply to any case in which the parties seek a divorce. Cook contends that she waived a conflict-of-interest claim only in the Cuyahoga County case, the only action pending at the time she signed the waiver. Cook's interpretation of the waiver is persuasive for several reasons.

First, when a party files a voluntary dismissal pursuant to Civ. R. 41(A)(1)(a), the case ceases to exist. In effect, it is as if the case had never been filed. *Zimmie v. Zimmie* (1984), 11 Ohio St.3d 94, 95, 11 OBR 396, 397, 464 N.E.2d 142, 144; *Goldstein v. Goldstein* (1988), 50 Ohio App.3d 4, 7, 552 N.E.2d 228, 231. Thus case No. 87–D–179824 ceased to exist when Cook voluntarily dismissed her divorce action. When the case ceased to exist, so did the effectiveness of the waiver pertaining to *"this case only."* (Emphasis added.) Therefore the waiver did not apply to the divorce action in Ashtabula County.

This interpretation is compelling, given the availability of a Civ. R. 41(A)(1)(a) dismissal and the frequency with which parties use it. Moreover, Sturm's attorney, Wilsman, participated in the negotiation and drafting of the waiver. If he had intended the waiver to pertain to *any* divorce action that Cook filed against Sturm, he could have put that language into the agreement. Instead the parties chose to limit the waiver to "this *case* only" (emphasis added), rather than to "any divorce action."

Second, the facts of this case do not warrant stretching the interpretation of the words "this case only" beyond their literal meaning. After being severed from the marital/corporate assets to cover her living expenses, Cook signed the waiver in exchange for Sturm & Associates, Inc.'s promise to pay her $1,600 per month. These funds came from the corporation (as a preliminary Subchapter S distribution) and, in effect, restored to Cook the living support which she had, prior to the separation, received from her interest in the corporation. Wilsman was the attorney who negotiated and ultimately extracted the waiver from Cook. Thus the appearances suggest that Cook's waiver was the consequence of economic blackmail.

## II

### Conflict of Interest

In reaching its decision today, the majority avoids an important question of first impression in Ohio: Where an attorney represents a close corporation,

what duty does that attorney owe to two equal shareholders who are involved in a dispute which involves the corporation's assets?

Cook claims that the dual representation of the corporation and Sturm constitutes a conflict of interest. Specifically, she argues that Wilsman, Swary, and Hahn Loeser & Parks are benefiting from Sturm's fraudulent transfer of corporate funds. She claims that as the corporation's attorney Wilsman and his firm should have objected to the transfer of funds to protect the interest of the company and its shareholders, including Cook.

The parties disagree over the appropriate standard for disqualification. Sturm urges the "substantial relationship test." Under this test, an attorney may be disqualified pursuant to Canon 4 of the Code of Professional Responsibility if he has accepted employment adverse to the interests of a former client on a matter substantially related to the prior litigation. *Allegaert v. Perot* (C.A.2, 1977), 565 F.2d 246, 250. Once the substantial relationship is established, the court presumes that the attorney received confidential information and, therefore, it need not determine if the attorney actually received it. *Id.* Under this standard, Sturm maintains, there was no conflict of interest because Wilsman and his fellow attorneys had no opportunity to obtain confidential information from Cook that could be used against her in the present proceeding. Sturm also asserts that Wilsman's past representation was of Sturm individually, and not the corporation.

Cook argues that the "substantial relationship test" is inappropriate in this case because that test evaluates a conflict of interest raised by past (and concluded) representation. Instead, Cook maintains that there is a present and ongoing conflict which is governed by Canon 5: "A Lawyer Should Exercise Independent Professional Judgment on Behalf of a Client."

Cook's argument is persuasive. EC 5–18 in particular is relevant to the instant case:

"A lawyer employed or retained by a corporation or similar entity owes his allegiance to the entity and not to a stockholder, director, officer, employee, representative, or other person connected with the entity. In advising the entity, a lawyer should keep paramount its interests and his professional judgment should not be influenced by the personal desires of any person or organization. Occasionally, a lawyer for an entity is requested by a stockholder, director, officer, employee, representative, or other person connected with the entity to represent him in an individual capacity; in such case the lawyer may serve the individual only if the lawyer is convinced that differing interests are not present."

By their past and present representation of the corporation, Wilsman and Hahn Loeser & Parks assumed a duty of loyalty to the corporation as an

entity, and not to individual shareholders, officers, or directors. See *Rosman v. Shapiro* (S.D.N.Y.1987), 653 F.Supp. 1441, 1445. Wilsman should have refrained from taking part in the controversy between Sturm and Cook over the control of the corporation.

The conflict-of-interest issue is complicated because the corporation here was a "close corporation." In such corporations, the distinction between corporate and individual representation may become blurred. *Rosman, supra,* at 1445–1446, fn. 8; *In re Banks* (1978), 283 Ore. 459, 473–474, 584 P.2d 284, 291–292; *Opdyke v. Kent Liquor Mart, Inc.* (1962), 40 Del.Ch. 316, 322, 181 A.2d 579, 583. The relationship between an attorney and a close corporation can be ambiguous, especially where the attorney's relations were with only one of the two equal shareholders. The apparent identity of interest between the shareholder and the close corporation may lead the shareholder to believe that corporate counsel is in fact his own individual counsel. See *In re Banks, supra,* 283 Ore. at 474–475, 584 P.2d at 292; *Rosman, supra,* at 1445.

In fact, Sturm maintains that in the past Wilsman and attorneys from Hahn Loeser & Parks represented him personally, and not the corporation. He points to the fact that the corporation never paid a retainer to Hahn Loeser & Parks, as well as the fact that Wilsman's contact was with Sturm, and never Cook. The record, however, indicates that Hahn Loeser & Parks represented the corporation at Sturm's request when the corporation was involved in legal disputes. Instead of showing a lack of conflict, Sturm's contention indicates just how confusing an attorney's representation of a close corporation can be.

Further, ambiguity between corporate and individual representation does not obviate a conflict of interest when the interests of the corporation and its shareholders diverge as they do here.

As counsel to the corporation, Wilsman represented Cook's interest in the family business as well as Sturm's interest. Wilsman had a fiduciary duty to protect the interests of both shareholders. When Wilsman continued to represent the corporation, he therefore continued to represent Cook. The once identical interests of the corporation, Sturm, and Cook have now diverged. Particularly where the corporate assets are the focus of the divorce action, Wilsman cannot fulfill his fiduciary duty to Cook and Sturm as corporate counsel, while representing either one of them individually. This conflict is sufficient to disqualify Wilsman from representing Sturm in the divorce proceeding.

At least one other court has faced this issue. *Woods v. Superior Ct. of Tulare Cty.* (1983), 149 Cal.App.3d 931, 197 Cal.Rptr. 185. In a solid analysis, the California Court of Appeals for the Fifth District reasoned as follows:

"We believe Mr. Kralowec necessarily represents *both* husband's and wife's interests in his role as attorney for the family corporation. A corporation's legal adviser must refrain from taking part in controversies among shareholders as to its control, and when his opinion is sought he must give it without bias or prejudice. (*Goldstein v. Lees* (1975) 46 Cal.App.3d 614, 622, [120 Cal.Rptr. 253, 258].)

"We believe *the fact that Mr. Kralowec continues to represent wife's interest in a family business which will be the focus of the marital dissolution is sufficient to disqualify Mr. Kralowec from representing husband.* Under such circumstances Mr. Kralowec should be disqualified even in the absence of a showing that he has in fact obtained confidential information. It has long been recognized that where ethical considerations are concerned, disqualification should be ordered not only where it is *clear* that the attorney *will* be adverse to his former client but also where it *appears* that he *might.* (See *Galbraith v. The State Bar, supra* [ (1933) ], 218 Cal. 329, 332–333 [23 P.2d 291, 292].) *Moreover, the purpose of the rules* against representing conflicting interests *is* not only to prevent dishonest conduct, but also *to avoid placing the honest practitioner in a position where he may be required to choose between conflicting duties or attempt to reconcile conflicting interests."* (Emphasis added in part.) *Id.* at 936, 197 Cal.Rptr. at 189.

Finally, Sturm maintains that Wilsman's representation of the corporation in the divorce proceeding is minimal and does not warrant disqualification. The argument fails. Where the marital assets are primarily corporate assets, circumstances may force the attorney representing both the shareholder and the corporation to choose between his two clients. In this case a conflict between the interests of the corporation and shareholder Sturm is thrust upon the attorney trying to represent both. Such conflict arises in connection with the following corporate actions: (1) the use of corporate funds to pay the legal fees for defending Sturm in the divorce action; (2) the deposit of corporate funds into the National City Bank account when they had been previously deposited in the AmeriTrust account, and the expense involved in making the change; (3) the firing of Cook as a corporate officer; and (4) changes in the corporation's policy for distributing corporate profits. Each of these situations involves a potential and serious conflict between the corporation's interest as an entity and the interest of Sturm in his domestic dispute with Cook. Wilsman's continued representation of both clients puts him in an untenable position which the Code of Professional Responsibility does not allow.

Accordingly I would affirm the court of appeals and disqualify Wilsman and Hahn Loeser & Parks from representing Sturm in this divorce proceeding.

RESNICK, J., concurs in the foregoing dissenting opinion.