**In re Gail STANLEY, Debtor.**

**Gail Stanley, Plaintiff,**

v.

**Student Loan Services, Inc., Defendant.**

**Bankruptcy No. 01–70373–TLH4.**
**Adversary No. 01–90025.**

United States Bankruptcy Court,
N.D. Florida,
Tallahassee Division.

Feb. 13, 2002.

William Crawford, Tallahassee, FL, for Plaintiff.

Mark G. Bodner, Assistant Attorney General, Ft. Lauderdale, FL, for Defendant.

Karen K. Specie, trustee.

## *MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS ADVERSARY COMPLAINT*

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS MATTER came before the Court upon defendant Florida Department of Education, assignee of Intuition, Inc. d/b/a Student Loan Services' (FDOE) motion to dismiss plaintiff debtor Gail Stanley's complaint for hardship discharge of her student loan debt pursuant to 11 U.S.C. § 523(a)(8). For the reasons discussed below, FDOE's motion to dismiss the complaint is denied. This Court has jurisdiction under 28 U.S.C. § 1334. This is a core matter under 28 U.S.C. § 157(b)(2)(I).

### Facts and Procedural History

The debtor accumulated over $100,000.00 of student loan debt pre-petition. The debtor filed her voluntary Chapter 7 petition on April 25, 2001. Her Schedule F listed educational loans from Student Loan Services for $111,813.00. Seeking a hardship discharge, she filed a complaint to determine dischargeability of the debt owed to Student Loan Services on July 23rd. FDOE, an agency of the State of Florida, is the guarantor of the loans. FDOE took an assignment of the loans on August 2nd from Intuition, Inc., d/b/a Student Loan Services.

The assigning creditor entity filed two proofs of claim for $115,423.15 for the student loans on August 6th. The proofs of claim were filed as required by the COMMON MANUAL UNIFIED STUDENT LOAN POLICY (July 2001).[1] The proofs of claim designated FDOE as the future correspondent for the claims. FDOE filed a notice of withdrawal of these claims on September 17th. On the same day, FDOE responded to the dischargeability complaint with a motion to dismiss. The debtor's discharge in this no-asset bankruptcy was entered September 18th.

### Issues

FDOE, citing *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), contends that the Eleventh Amendment of the United States Constitution provides FDOE with sovereign immunity, asserting that a state agency cannot be sued by a citizen of that state in a federal court without the consent of that agency. FDOE denies consent, and contends that the filing of the proofs of claim by the predecessor lender were unauthorized by the State. FDOE further

---

**1.** A lender must file a bankruptcy claim if ... [a] borrower files a petition for undue hardship (or adversary complaint) under a Chapter 7 or 11 bankruptcy. COMMON MANUAL UNIFIED STUDENT LOAN POLICY, Chapter 8, page 20 (July 2001).

argues that its withdrawal of the proofs of claim filed by its predecessor causes the State of Florida's sovereign immunity to lawsuits to remain intact.

Stanley replies with three arguments. First, she maintains that the state's Eleventh Amendment immunity was abrogated by Congress under 11 U.S.C. § 106.[2] Second, she contends that the state waived its sovereign immunity by filing the proofs of claim.[3] Third, Stanley argues that the subsequent withdrawal of the claims by FDOE does not affect the waiver.

### Discussion

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. While the text of the Amendment appears to restrict only the Article III diversity jurisdiction of the federal courts, it is understood that the Eleventh Amendment stands not only for what it says, but also for the premise which it confirms. *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) *citing Blatchford v. Native Village of Noatak,* 501 U.S. 775, 779, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991). That assumption, first observed over a century ago in *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842(1890), has two parts: first, that each State is a sovereign entity in our federal system; and second, that "[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent," *Hans* at 13, 10 S.Ct. 504, (emphasis deleted), quoting THE FEDERALIST No. 81 (A.Hamilton). Federal jurisdiction over suits against non-consenting States "was not contemplated by the Constitution when establishing the judicial power of the United States." *Hans* at 15, 10 S.Ct. 504. Thus, the Eleventh Amendment bars suits brought against a state by its own citizens. *Id.*

Two years after *Seminole Tribe,* the Eleventh Circuit addressed the Eleventh Amendment sovereign immunity issue in a bankruptcy context. *See In re Burke,* 146 F.3d 1313 (11th Cir.1998). The State of Georgia Department of Revenue appealed the district court's affirmance of two bankruptcy court orders denying the State's motions to dismiss and motions for summary judgment based on Eleventh Amendment immunity. The Eleventh Circuit consolidated the appeals of the two separate bankruptcy proceedings. The State of Georgia contended that Congress' power to abrogate states' Eleventh Amendment immunity only exists under § 5 of the Fourteenth Amendment, and that § 106(a) of the Bankruptcy Code was not enacted pursuant to the Fourteenth Amendment. The debtors responded that § 106(a) validly abrogates the states' sovereign immunity because § 106(a) was enacted pursuant to § 5 of the Fourteenth Amendment in order to enforce a protected due process property interest or the privileges and immunities of federal citi-

**2.** Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth with respect to ... section 523. 11 U.S.C. § 106(a)(1). The court may hear and determine any issue arising with respect to the application of such sections to governmental units. 11 U.S.C. § 106(a)(2).

**3.** A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose. 11 U.S.C. § 106(b).

zenship, as recognized in § 1 of the Fourteenth Amendment.

The *Burke* panel, in affirming the district court noted that

> ... there are certain well-established exceptions to Eleventh Amendment immunity. First, a state may waive its Eleventh Amendment immunity and consent to suit in federal court. *See Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 238, [105 S.Ct. 3142, 87 L.Ed.2d 171] (1985). Second, Congress can abrogate states' Eleventh Amendment immunity if Congress unequivocally expresses an intent to abrogate state immunity and acts pursuant to a valid exercise of power. *See Green v. Mansour,* 474 U.S. 64, 68, [106 S.Ct. 423, 88 L.Ed.2d 371] (1985) (*citing Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 99, [104 S.Ct. 900, 79 L.Ed.2d 67] (1984)).

*Burke* at 1317.

The *Burke* tribunal declined to resolve the abrogation issue. The panel, assuming *arguendo* that the State of Georgia has Eleventh Amendment immunity and it has not been validly abrogated by § 106(a), still concluded that the State waived its sovereign immunity by filing a proof of claim in the debtors' bankruptcy proceedings. *Burke* at 1317. The *Burke* court relied on *Gardner v. New Jersey,* 329 U.S. 565, 573–74, 67 S.Ct. 467, 91 L.Ed. 504 (1947) in holding that "in the absence of explicit consent by state statute or constitutional provision, a State may consent to a federal court's jurisdiction through its affirmative conduct. ... By filing a proof of claim in the debtor['s] ... bankruptcy proceeding, the State waived its sovereign immunity for purposes of the adjudication of those claims." *Burke* at 1318, 1319.

The instant defendant was also a defendant in *In re Drivas,* 266 B.R. 515 (Bankr. M.D.Fla.2001). In *Drivas,* the debtor took out student loans pre-petition. The loans were guaranteed by the Florida Office of Student Financial Assistance (FOSFA), a division of FDOE. The debtor filed a Chapter 13 petition on March 9, 2001. The successor lender assigned the loans to FOSFA on March 22nd and filed proofs of claim against the debtor's estate on March 23rd. The debtor filed a dischargeability complaint on April 19th, seeking a hardship discharge of her student loans under § 523(a)(8). FDOE responded on May 23rd with a motion to dismiss, arguing Eleventh Amendment sovereign immunity, asserting the unconstitutionality of Congress' attempt to abrogate the State's immunity under § 106 of the Code, and alleging that the proofs of claim filed by FDOE's predecessor did not constitute a waiver of the State's Eleventh Amendment sovereign immunity.

Judge Funk held that FDOE "waived the State of Florida's Eleventh Amendment immunity ... by allowing proofs of claim for the student loans at issue to be filed on its behalf." *Id.* at 523. The State's motion to dismiss was denied.

### Analysis

■ FDOE argues that the lender was not expressly authorized to file a proof of claim in this no-asset Chapter 7. FDOE asserts that an unauthorized filing of a proof of claim does not constitute a waiver of sovereign immunity by the State. To support this argument, FDOE submitted as part of its memorandum of law the Manual excerpt attached here as Appendix A. Indeed, the Manual states that a lender "must file a proof of claim with the bankruptcy court no later than 30 days after it receives the Notice—unless the Notice specifically states that a proof of claim is not required." Manual, Chapter 8, page 20. In this case, the Notice of Chapter 7 Bankruptcy (Docket Entry # 3) asked creditors not to file a proof of claim

unless they received a notice to do so. No subsequent notice to creditors was given in this case.

Nonetheless, this language does not prohibit the filing of a proof of claim. In fact, the MANUAL clearly instructs the lender to file a proof of claim when a borrower files an adversary complaint for undue hardship. The pro-filing language comes after the anti-filing language, on the same page of the document. Although the MANUAL is not a statute, fundamental statutory interpretation techniques suggest that the later language controls the former. The no-asset bankruptcy and the complaint for hardship discharge are separate conditions, each governed by specific instructions. Thus, the MANUAL directs the lender to file a proof of claim in this case, and such filing constitutes a waiver of the State's Eleventh Amendment sovereign immunity.

The MANUAL edition incorporated in the State's memorandum of law is dated July, 2001, well after the Eleventh Circuit's decision in *Burke*. This Court can only conclude that by requiring the filing of a proof of claim following a § 523(a)(8) complaint, the State has decided to waive sovereign immunity and fully participate in proceedings to determine the dischargeability of educational debt.

 In keeping with the *Burke* analysis, it is not necessary for this Court to resolve the Eleventh Amendment abrogation issue on the facts before me today. The waiver of Florida's sovereign immunity followed the submission of the proofs of claim. However, the State asserts that the withdrawal of the proofs of claim serves to reinstate the State's sovereign immunity from this adversary proceeding.

This issue was addressed in *In re Barrett Refining Corp.*, 221 B.R. 795 (Bankr. W.D.Okla.1998). In *Barrett*, the State of Mississippi brought charges for $750,000.00 in fines and penalties against Barrett for pollution from a crude oil refinery. Barrett filed a Chapter 11 petition, and Mississippi filed its proof of claim, which included a statement that the filing of the proof did not constitute a consent to the bankruptcy court's jurisdiction nor a waiver of the State's rights. Barrett then proposed a Chapter 11 plan that included references to § 106, and sought to bifurcate the debt. During the pendency of the matter, the Supreme Court decided *Seminole Tribe*, and Mississippi sought to withdraw it proof of claim. *Id.* at 797–98.

The *Barrett* court concluded that "once a waiver of rights has been made, it cannot be undone.... This position has extensive support throughout American jurisprudence." *Id.*[4] I agree with the rationale of *Barrett*, and find that the State, its predecessor having filed a proof of claim, does not enjoy Eleventh Amendment sovereign immunity from this proceeding.

### Conclusion

The sovereign immunity afforded to States by the Eleventh Amendment to the United States Constitution was waived when the lender, acting pursuant to the instructions of the State, filed proofs of claim in this bankruptcy case. FDOE cannot restore its sovereign immunity by withdrawing its proofs of claim; Pandora cannot be forced back into the box. Therefore, it is

---

**4.** *Citing: Thompson v. Phenix Insurance Company,* 136 U.S. 287, 10 S.Ct. 1019, 34 L.Ed. 408 (1890); *Sturm v. Sturm,* 61 Ohio St.3d 298, 574 N.E.2d 522 (1991); *MacKnight & Hoffman, Inc. v. Programs for Achievement in Reading, Inc.,* 96 R.I. 345, 191 A.2d 354 (1963); *Engstrom v. Farmers & Bankers Life Insurance Company,* 230 Minn. 308, 41 N.W.2d 422 (1950); *Thomas N. Carlton Estate v. Keller,* 52 So.2d 131 (Fla.1951).

912

ORDERED AND ADJUDGED that the defendant creditor FDOE's motion to dismiss is hereby DENIED.

Appendix A

# COMMON MANUAL

*Unified Student Loan Policy*
*July 2001*

©2001 Common Manual-Guarantors

Some guarantors have different requirements regarding the treatment of disbursements when a lender is notified of a borrower's filing for bankruptcy. These requirements are noted in appendix C.

## Suspending Collection

If the lender is notified that a borrower has filed a petition for relief in bankruptcy, the lender must immediately suspend any collection efforts against the borrower that are outside the bankruptcy proceeding. If the borrower filed a Chapter 12 or 13 bankruptcy, the lender must also suspend any collection efforts against any comaker or endorser. Suspension of collection efforts against any comaker or endorser is optional if the borrower filed a Chapter 7 or 11 bankruptcy.

If the lender is notified that a comaker or endorser has filed a petition for relief in bankruptcy, the lender must immediately suspend any collection efforts against the comaker or endorser that are outside the bankruptcy proceeding. If the comaker or endorser filed a Chapter 12 or 13 bankruptcy, the lender must also suspend any collection efforts against the borrower and any other parties to the note. Suspension of collection activities against the borrower and any other parties to the note is optional if the comaker or endorser filed a Chapter 7 or 11 bankruptcy.

## Filing a Proof of Claim

A lender must file a proof of claim with the bankruptcy court no later than 30 days after it receives the Notice—unless the Notice specifically states that a proof of claim is not required. If required, the proof of claim must be filed, even if a default claim has already been filed on the loan and the lender has not yet received payment from the guarantor. If a proof of claim is required, the lender must immediately forward a copy of the bankruptcy notification, proof of claim, and an original assignment of the proof of claim to the guarantor.

[§ 682.402(f)(4) ]

▲ Some guarantors may file a proof of claim on the lender's behalf. Lenders may contact individual guarantors for more information. See section 1.5 for contact information.

If a proof of claim is not required by the court, the lender should ensure that it is on the bankruptcy court's mailing list. This may be accomplished through either a telephone call or letter to the bankruptcy court. Doing so will ensure that the current holder receives all notices regarding the borrower's bankruptcy filing.

All notices received regarding the borrower's bankruptcy filing should be forwarded to the guarantor, within 30 days of receipt, if a claim is pending or has been paid.

## Chapter 12 or 13 Bankruptcy Plan Procedures

If a lender is advised that a borrower has filed for bankruptcy under Chapter 12 or 13, the lender is strongly encouraged to immediately forward a copy of the bankruptcy plan to the guarantor. If the lender does not possess a copy of the bankruptcy plan, the lender must immediately send a letter to the bankruptcy court requesting that the bankruptcy plan be forwarded to the guarantor. At the time a claim is filed, the lender must include in the claim file either a copy of the bankruptcy plan or a copy of the letter previously sent to the bankruptcy court requesting that the bankruptcy plan be forwarded to the guarantor.

▲ Some guarantors may obtain a copy of the bankruptcy plan on the lender's behalf. Lenders may contact individual guarantors for more information. See section 1.5 for contact information.

## Loans Eligible for Bankruptcy Claim Payment

A lender must file a bankruptcy claim if any one of the following conditions exist:

— A borrower files a Chapter 12 or 13 bankruptcy.

— A Chapter 7 or 11 bankruptcy is converted to a Chapter 12 or 13 bankruptcy.

— A borrower files a petition for undue hardship (or adversary complaint) under a Chapter 7 or 11 bankruptcy.

[§ 682.402(f)(5)(i)(A) and (C); 971 PL 105–244]

In all cases, the guarantor will review the loan's servicing history to ensure that servicing requirements have been fulfilled before the date the lender was notified of the borrower's petition for bankruptcy.

If a loan is made to two borrowers as comakers, the loan is dischargeable as a bankruptcy claim only if both borrowers have filed bankruptcy actions under which federal educational loans are dischargeable or if one borrower has done so and the other borrower has his or her obligation to repay the loan discharged on another basis (such as death or total and permanent disability). If only one comaker has his or her obligation to repay the loan discharged, the other comaker becomes obligated for the repayment of the remaining loan balance. However, the lender must follow bankruptcy, statutory, and case law as it pertains to comaker discharge.